[Crim. No. 30108. Second Dist., Div. One. May 10, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR MADRIGAL GUTIERREZ, Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Richard A. Curtis, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LILLIE, J.—A jury found defendant guilty[1] of forcible rape of Tianne H. (§ 261, subd. 3, Pen. Code) and that he acted in concert with another in violation of section 264.1, Penal Code (count I); forcing Tianne, a child under the age of 14 years and more than 10 years younger than he, to orally copulate him (§ 288a, subd. (c), Pen. Code) and that he acted in concert with another in violation of section 288a, subdivision (d), Penal Code (count II); lewd and lascivious acts on Tianne, a child under the age of 14 years (§ 288, Pen. Code) (count III) and false imprisonment (§ 236, Pen. Code), a lesser included offense in kidnaping (count V). He appeals from the judgment.

---

[1]Defendant was acquitted of charges of various sexual acts committed on Robin C., age 19.

Robin, 19 years old, was 12-year-old Tianne's baby sitter on July 30. Between 4 and 5 p.m. they hitchhiked from Northridge to Sylmar to see Robin's sister and then to San Fernando Mall. Sometime after 9:30 p.m., they were walking down the street, not hitchhiking, when defendant and "Crazy,"[2] who was driving a dark blue Chevrolet, approached them; Robin accepted their invitation to "cruise the Mall"; Tianne did not want to go, but got in the back seat with defendant because she did not know her way around San Fernando; Robin sat in front with "Crazy"; they bought some wine and the males took some pills and smoked marijuana; "Crazy" drove into the hills and stopped in a deserted area; Tianne asked "Crazy" to take her home and started to get out of the car but he "jerked [her] back in"; when Tianne cried and again asked to be taken home, "Crazy," who was still in the front seat turned and punched her in the face between her eyes; Tianne, who sat with defendant in the back seat, continued to cry and "Crazy" again hit her in the face; to "both of them ["Crazy" and defendant]," Robin said Tianne was 12 years old, "like" — "Leave her alone. She's only twelve years old"; she said it twice; as Robin grabbed "Crazy's" arm and told him to leave Tianne alone " 'cause she was only twelve years old,' " he turned and hit her head against the window; during all of this time defendant was in the back seat next to Tianne.

While Tianne was still crying defendant told her to "shut up" or he would hit her. "Crazy" ripped off Robin's jacket and told them to get undressed, "they had this planned. And if [they] didn't do what they said, they were going to hit [them] again"; "Crazy" committed numerous sexual acts on Robin; defendant unbuttoned and removed Tianne's pants and shirt and had sexual intercourse with her after which defendant conversed in Spanish with "Crazy" and they changed places; "Crazy" then forced Tianne into acts of sexual intercourse, oral copulation and anal intercourse. Defendant committed various sexual acts with Robin then he and "Crazy" again changed places, and defendant returned to the back seat with Tianne and forced her into another act of sexual intercourse and an act of oral copulation; "Crazy" committed further sexual acts on Robin; in an effort to stall defendant, Tianne talked about his tattoos. The girls were told to get dressed and "Crazy" and defendant dropped them off at the home of Robin's sister between 5 and 5:30 a.m.

The police arrived and the girls were taken to the hospital; Tianne had various minor bruises about her body and a swollen eye, and a smear

---

[2]It appears from statement made to Officer Cox by defendant that "Crazy" was only a casual acquaintance whose last name and whereabouts were unknown.

showed the presence of sperm and blood; Robin had a black eye and a smear showed the presence of sperm.

After defendant's arrest Officer McElhiney told him two girls ages 12 and 19 accused him of rape, sodomy, oral copulation and kidnaping; defendant denied knowing anything about it, could not recall what he did on July 30 and denied knowing anyone by the name of Tianne or Robin or "Crazy" or anyone who drove a dark blue Chevrolet. About an hour later Officer Cox talked to defendant; at first defendant denied being with Tianne and Robin or in the hills, then changed his story and said he had been with them but no force had been used and the acts were consensual, giving details of the evening.[3] Asked if he knew the ages of the girls, defendant said he thought Robin was 18 and did not know how old Tianne was; asked "How old did you think she was?" defendant answered 17, but he never heard Robin say that Tianne was only 12.

The defense was an alibi; Reyes, Valdez, Sanchez and defendant testified they were at the State House in Sylmar between 10 p.m. and 2 a.m. However, in rebuttal, Johnny Victoria testified that he overheard the three witnesses discussing their testimony the previous day in the hallway outside the courtroom, and they talked about what their testimony should be and kept going over the sequence of events trying to describe how many people were present, how much time they spent with defendant and which details sounded best to make their stories consistent.

██ Defendant offered and the court refused an instruction to the effect that a reasonable mistake on his part as to Tianne's age was a defense to the charge of child molestation under section 288, Penal Code. Appellant concedes that if *People* v. *Toliver,* 270 Cal.App.2d 492 [75 Cal.Rptr. 819] and *People* v. *Tober,* 241 Cal.App.2d 66 [50 Cal.Rptr. 228],

---

[3]Defendant told Officer Cox that around 9:30 p.m. he asked a man he had seen only once before to give him a ride to a dance hall; the man drove a dark blue Chevrolet and agreed, in exchange for $1 for gas; on the way, the driver suggested they cruise the mall and pick up some girls, and he agreed; they saw Robin and Tianne and asked if they wanted to cruise and they did; later they asked the girls if they wanted something to drink and they said yes so they bought some wine and drove up into the hills, drank the wine and talked; he looked at Tianne and said "You know what you're here for, don't you?" and she said she did; they took off their clothes and commenced to "get it on"; he then admitted having intercourse with Tianne and engaging in acts of oral copulation and anal intercourse. They then switched places and he did the same thing to Robin; no force was used and the girls consented. However, when confronted with the doctor's reports showing facial damage to the girls, he admitted "Crazy" hit them once or twice but said he did not do so.

which articulate the principle that reasonable mistake as to the victim's age is not a defense in a section 288 prosecution, are to be followed the court's refusal was proper, but submits that this authority is an aberrance from the rules relating to criminal responsibility in California and is no longer viable, and asks this court to overrule *Toliver* and *Tober* and disapprove a portion of *People* v. *Hernandez,* 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], upon which those cases rely.

In 1964 the California Supreme Court in *People* v. *Hernandez, supra,* 61 Cal.2d 529, overruling established precedent, held that in a statutory rape prosecution it was error to refuse to permit defendant to present evidence that he had in good faith a reasonable belief that the prosecutrix was over 18 years of age. However, in recognizing this as a defense, *Hernandez* made it clear that such defense was not intended to apply in a case in which the female obviously is of tender years. Said the court at page 536: "Our departure from the views expressed in *Ratz* [*People* v. *Ratz,* 115 Cal. 132 (46 P. 915)] is in no manner indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation. No responsible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an 'infant' female whose obviously tender years preclude the existence of reasonable grounds for that belief. However, the prosecutrix in the instant case was but three months short of 18 years of age and there is nothing in the record to indicate that the purposes of the law as stated in *Ratz* can be better served by foreclosing the defense of a lack of intent."

Appellant argues at length that the fundamental principle upon which the *Hernandez* decision rests is the primordial policy set up by the Legislature in section 20, Penal Code, that mens rea, the guilty mind, is an indispensable element of every crime unless specifically eliminated by the Legislature, thus the *Hernandez* ruling that in a statutory rape prosecution a good faith reasonable belief that the prosecutrix was over 18 is a defense should govern section 288 prosecutions, and the court in *People* v. *Tober,* 241 Cal.App.2d 66 [50 Cal.Rptr. 228] and *People* v. *Toliver,* 270 Cal.App.2d 492 [75 Cal.Rptr. 819] was in error in failing to apply it.

In rejecting the *Hernandez* defense in prosecutions under section 288, Penal Code, *Tober* and *Toliver* rely on the foregoing quote from *People* v. *Hernandez, supra,* 61 Cal.2d at page 536. Tober argued that if in good faith he believed that the 10-year-old girl he was charged with molesting

was an adult[4] he could not be guilty of the crime of committing lewd and lascivious acts upon the body of a girl under the age of 14. In rejecting the *Hernandez* defense, the court said "we do not accept the premise that sexually motivated fondling of the private parts of a 10-year-old child may be indulged in under a claimed good faith belief that the child is either an adult or has reached the age of 14 years. The very refusal to distinguish between a child of tender years and an adult may be said to be characteristic of some of those who engage in the sort of conduct of which defendant has been convicted." (P. 73.) Likewise in *People* v. *Toliver, supra,* 270 Cal.App.2d 492, the court refused to apply the *Hernandez* defense. Its rationale was that the public policy underlying the crime of statutory rape is far different from that protecting children of tender years against lewd and lascivious assaults which underlie section 288, Penal Code. Toliver's defense had been alibi; no evidence or instruction was offered by him on the subject of his belief that the child was over 14 years of age; and the prosecution offered no evidence that the victim appeared older or younger than 14. Stating that it did not appear how appellant would reconcile his defense of alibi with the defense he believed the victim was over 14, the court said at pages 495-496: "Moreover, we are convinced that such belief is not a defense under section 288, and that the philosophy applying to violations of that section is entirely different from that applying to violations of section 261, subdivision 1. (Footnote omitted.) . . . In *Hernandez, supra,* 61 Cal.2d 529, the court in effect considered that section 288 is for protection of infants or children as to whom persons commit lewd and lascivious acts at their peril. *Hernandez* points out that in a broad sense consent can be an element of statutory rape, on the principle that a female whom a male may reasonably believe to be older than 18 can consent to the act of intercourse. On the other hand, violation of section 288 does not involve consent of any sort, thereby placing the public policies underlying it and statutory rape on different footings."

In our view the public policy considerations relied upon in *Toliver* and *Tober* have not ceased to exist and their rationale is still sound, and compel us to follow the principle articulated in *People* v. *Toliver,* 270 Cal.App.2d 492 [75 Cal.Rptr. 819] and *People* v. *Tober,* 241 Cal.App.2d 66 [50 Cal.Rptr. 228], that a good faith reasonable belief that the victim was

---

[4]Actually the defense in *Tober* was not one of belief that the child was over the age of 14, but one of identity defendant believing he had entered the bed of a mature woman; he claimed that only when she uncovered her face did he observe that she was a child at which time he asked her age and she said she was 10 years old.

of the age of 14 years or over is not a defense in a prosecution under section 288, Penal Code.[5]

■ The trial court instructed the jury that it could consider any pretrial statements of defendant that were false or deliberately misleading as tending to show proof of consciousness of guilt concerning the charges (CALJIC No. 2.03). Appellant cites this as error on the ground that his alibi defense was consistent with his original statement to Officer Cox that he was never with Tianne and Robin or at the location in the hills. The instruction was proper. The record shows that later in the interview defendant changed his story and admitted to Officer Cox he had been with the girls but no force was used and all acts were consensual, then related in detail what took place that night; at trial defendant denied admitting this to Officer Cox. Appellant claims that his admissions to Cox were not the "false or deliberately misleading statements" which supported the instruction but that the instruction referred to his having denied being present and since his denial was not inconsistent with his alibi defense, the giving of CALJIC No. 2.03 was error. We disagree. Clearly defendant gave to Officer Cox deliberately conflicting statements which supported the giving of CALJIC No. 2.03. First he denied being in the hills with any girls on July 30, and to this he testified in his defense; then he admitted driving into the hills with the girls but stated that all sexual acts were consensual. Appellant cites *People* v. *Rubio,* 71 Cal.App.3d 757 [139 Cal.Rptr. 750], but the passage on which he relies is clear that indeed CALJIC No. 2.03 is applicable where a defendant makes an explanation of his behavior to the police which is inconsistent with his testimony at trial. (P. 769.) This is the case at bench although at trial defendant denied he made the last admission to Officer Cox.

■ The jury was instructed: "If there is any evidence that efforts to procure false or fabricated evidence were made by another person on

[5]Relying on his statement to Officer Cox that he thought Tianne was 17 and he never heard Robin say she was only 12, his counsel's self-serving statement to the court when offering the refused instruction that Tianne looked as old as or older than Robin, and the comment of the judge at the time of pronouncement of judgment and sentence that Tianne looked somewhat older than 12, indicating his opinion of Tianne's appearance, appellant submits there was sufficient factual basis to support his requested instruction. The Attorney General argues that *People* v. *Toliver, supra,* 270 Cal.App.2d 497 would preclude the giving of such instruction because appellant relied solely on his alibi defense and has failed to explain how he would reconcile that with the defense that he did it but believed Tianne was over 14, However here, unlike in *Toliver,* there is some evidence as to his asserted belief that Tianne was older than 14, and her general appearance at trial; and defendant did request an instruction on the subject which was refused. Had such a defense been available to the defendant we believe there was evidence to support an instruction thereon.

behalf of the defendant, you may not consider this as tending to show the defendant's consciousness of guilt unless you find that the defendant authorized those efforts." (CALJIC No. 2.05.) This is cited as error appellant claiming there was no evidence from which it could be inferred that he had authorized efforts by others to fabricate evidence on his behalf. The instruction was proper and obviously given for defendant's protection. Reyes, Valdez and Sanchez testified that in the evening of July 30 they were with defendant at an entertainment place in Sylmar; in rebuttal Victoria testified that before these witnesses gave their testimony he overheard them in the hallway discussing the details of their testimony in an effort to fashion stories consistent in their sequence of events, time, place and persons present. This rebuttal testimony, if believed by the jury, unquestionably established that defendant's alibi witnesses made efforts to and did fabricate evidence on his behalf. CALJIC No. 2.05 protected defendant from the devastating effect of this testimony by admonishing the jury that it could not consider these efforts as tending to show defendant's consciousness of guilt.

■ Inherent in appellant's argument that he cannot be convicted of both a lewd act with a child (§ 288, Pen. Code) and either rape or oral copulation for the same act, is the erroneous assumption that only two sexual offenses against Tianne were committed—forcible rape and forcible oral copulation. We deal first with the contention that the court *sua sponte* should have instructed the jury that in order to convict him of a violation of section 288 the jury had to agree that such act was other than the acts which formed the basis for the rape and oral copulation convictions.

Even though not requested, the trial court is under an affirmative duty to give *sua sponte* correctly phrased instructions on " '[T]he general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court and which are necessary for the jury's understanding of the case.' [Citations.]" (*People* v. *Stewart,* 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].) On the trial level appellant made no request for an instruction on this subject but in his opening brief now submits a lengthy, involved and highly technical instruction which he claims the trial court should have fashioned on its own motion because the standard CALJIC instructions are inadequate under the facts of this case. The kind of instruction appellant submits here hardly constitutes the "general principle of law" the court is required to give in the absence of a request.

The record clearly establishes acts independent of those forming the basis for the rape and oral copulation convictions, any one of which acts is sufficient to support the conviction of violation of section 288, Penal Code. In the evening of July 30 "Crazy" and defendant picked up the girls and after cruising around and buying wine drove them into the hills. Acting in concert with "Crazy" and by force and violence defendant committed numerous sexual acts on Tianne, personally and by aiding and abetting "Crazy." The sexual activity consummed considerable time. After "Crazy" hit the girls several times subduing them and told them he and defendant had planned this and if they did not do as they were told they would be hit again, defendant, having told Tianne to "Shut up or I am going to hit you like he did," disrobed her and had an act of sexual intercourse, then he conversed in Spanish with "Crazy" and switched places with him; defendant got into the front seat with Robin and "Crazy" crawled into the back seat with Tianne where he forced on her several acts of intercourse, an act of sodomy and an act of oral copulation; he and defendant again changed places and defendant crawled into the back seat with Tianne and engaged in another act of sexual intercourse with her and forced her to commit an act of oral copulation. The jury could have considered any of the foregoing distinct acts apart from the acts which formed the basis for the rape and oral copulation convictions as a basis for the section 288 violation.[6] Defendant

[6]Defendant was convicted of three sexual offenses against Tianne—forcible rape (count I), forcible oral copulation (count II) and lewd and lascivious acts on a child (count III). Under the evidence the jury could find that defendant was as much responsible for each of "Crazy's" sexual offenses against Tianne (forcible rape, sodomy, oral copulation), as for his own acts (forcible rape, forcible rape and forcible oral copulation) on the theory that he aided and abetted "Crazy" in their commission. (§ 31, Pen. Code; *People* v. *Durham,* 70 Cal.2d 171, 180-181 [74 Cal.Rptr. 262, 449 P.2d 198].) Thus under the aiding and abetting theory any one of "Crazy's" sexual offenses against Tianne could be considered by the jury as a basis for the section 288 violation. We note appellant's claim that his acquittal of sodomy (§ 286, Pen. Code), on count IV clearly implies that none of the convictions was based on the aiding and abetting theory. This is hardly true in light of the jury's sentence enhancement findings on counts I and II, as alleged, that during the commission of each offense defendant, voluntarily acting in concert with another person, participated in said act either personally or by aiding and abetting such other person. Further, his acquittal of sodomy on count IV does not necessarily imply a rejection of the aiding and abetting theory for it is just as likely that the jury used "Crazy's" act of anal intercourse with Tianne as the basis for the section 288 violation, compelling the acquittal of defendant of the substantive offense as charged in count IV. Finanlly, we note in connection with his argument challenging the validity of the foregoing sentence enhancement findings that appellant concedes that ". . . appellant's and his companion's activities likely were sufficient to support the theory that each aided and abetted the other . . . ."

In any case the evidence clearly demonstrates that defendant personally committed three separate and distinct sexual offenses on Tianne—he forced her to have an act of sexual intercourse, then after rather lengthy sexual activities with Robin in the front seat, returned to the back seat and forced another act of sexual intercourse on Tianne and then

was properly convicted and sentenced on each of the three counts. (*People* v. *Slobodion,* 31 Cal.2d 555, 562-563 [191 P.2d 1].)

■ While conceding his and "Crazy's" activities were sufficient to support the theory that each aided and abetted the other, appellant contends that the enhancement punishments provided by sections 264.1 and 288a, subdivision (d), Penal Code for "acting in concert" apply only to "gang-type" forcible sexual assaults, relying on *People* v. *Calimee,* 49 Cal.App.3d 337 [122 Cal.Rptr. 658] and *People* v. *Wheeler,* 71 Cal.App.3d 902 [139 Cal.Rptr. 737]. *People* v. *Calimee* involved an incident of six males and one male in a jail cell; Calimee did not personally engaged in any sexual act although he hit the victim several times with his fist during sexual assaults by the others. The court said that the obvious purpose of the foregoing statutes is to provide increased punishment where there is a "gang-type" sexual assault (p. 341), but nothing in the opinion limits the application of these statutes to "gang-type" forcible sexual activities only. *People* v. *Wheeler* involved two males and one female; defendant fondled the victim and held her arm while a companion raped her; defendant personally committed no sexual act on her. The court held that the finding under section 264.1 was proper and commented that the statute was designed to discourage gang sexual assaults where any unlawful force is used. (P. 907.) In the case at bench there were two males and two young girls; each male in turn sexually assaulted each girl. Nothing in *Wheeler* or *Calimee* precludes the application of the statutes in such a case. The element of multiple parties acting in concert appears to be sufficient whether the assailants are two or six. (See *People* v. *Wheeler, supra,* 71 Cal.App.3d 902, 907.) Further, the statutes refer to defendant acting in concert "with another person." The findings were proper under the evidence because it establishes that defendant both personally and as an aider and abettor of "Crazy" while acting in concert with him committed a variety of acts including rape and oral copulation by force and violence against Tianne's will.

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1978.

forced her to commit an act of oral copulation—which establishes seriatim a violation of section 261, subdivision 3 (forcible rape) as charged in count I, a violation of section 288 (lewd and lascivious acts on a child) as charged in count III and a violation of section 288a (forcible oral copulation) as charged in count II.