[Crim. No. 6396. Fifth Dist. Mar. 16, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM F. CALDWELL, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*See footnote *post,* page 950.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ramon M. de la Guardia and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HAMLIN, J.—**

### THE CASE

Defendant was charged by information with sodomy in concert and by force (Pen. Code, § 286, subd. (d)),[1] oral copulation in concert and by force

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

(§ 288a, subd. (d)), penetration of the vagina with a foreign object by force (§ 289), and mayhem (§ 203). Defendant pleaded not guilty and not guilty by reason of insanity.

The jury found defendant guilty as charged except that he did not act in concert in committing forcible oral copulation. The court, sitting without a jury, found defendant sane at the time of the offenses. The court then sentenced defendant to 23 years in state prison. Defendant filed a timely notice of appeal from the judgment.

On appeal defendant contends the trial court committed prejudicial instructional and sentencing errors. Additionally, he argues insufficient evidence was presented to sustain the convictions of sodomy in concert and mayhem. We reject all of defendant's contentions for the reasons we shall state.

## THE FACTS

In April 1981, Ronda M., the victim in this case, was 25 years old and living in an apartment with her mother. Despite her chronological age, Ronda had completed only the 10th grade and had the social development of a 14-year-old. She is considered developmentally disabled.

On April 10 Rick, a young man Ronda had been dating, came to the apartment and asked Ronda to go driving around with him. Although Rick was alone when he invited Ronda, defendant was waiting in the truck in which Rick arrived. The three of them drove to the apartment of Melanie, a girl friend. While there, all three drank beer, and defendant sniffed paint. From there they went to a convenience store to buy beer. Sometime after they left Melanie's apartment and for an indefinite period during the evening, defendant's cousin Jimmy joined them. At the convenience store Rick went in to buy the beer, and defendant remained with Ronda in the truck. While Rick was gone, defendant leaned over and bit Ronda on the ear. Thereafter he forced Ronda to orally copulate him. Ronda submitted out of fear that defendant would harm her further. When Rick returned, Ronda begged him to take her home, but Rick refused.

From the store Rick, defendant and Ronda drove out to a vineyard. During the drive, defendant bit both of Ronda's ears until they bled and again forced her to orally copulate him. After reaching the vineyard, defendant instructed Rick to take Ronda into the back of the truck and sodomize her or defendant would beat him up; Rick complied out of fear of defendant.

After this occurred, the three left the vineyard and stopped at a house. While there Rick told Ronda to attempt an escape. She ran from the house, but defendant followed her in the truck and forced her to re-enter the truck to avoid being run down. Once inside, defendant beat her about the face and bit her again, this time completely perforating her lower lip. Defendant then forced Ronda's legs apart and attempted to insert a beer can into her vagina. Again he forced Ronda to orally copulate him. During this time Rick refused to attempt to rescue Ronda. Defendant finally fell asleep, and Ronda escaped to a nearby road where she got a ride home from a passing motorist.

When Ronda reached home, she told her mother she had been beaten and raped. Ronda's mother decided against taking Ronda to the hospital or calling the police. Three days later they went to a regularly scheduled counseling session, and the counselor instructed Ronda and her mother to go to Valley Medical Center (VMC) and to notify the police. Seven days later (ten days after the assault), when the counselor learned they had not followed her instructions, the counselor notified the police to meet them at VMC, and she took Ronda and her mother there.

The medical examination revealed vaginal lacerations, a severely bitten lip and a missing portion of one of Ronda's ears. A detective interviewed Ronda and later defendant. During defendant's interview, defendant told the detective his memory of the events of the evening of April 10 was very sketchy because of the alcohol he had drunk and the paint he had sniffed. He remembered a girl orally copulating him, and he remembered tearing her clothes off. He vaguely remembered someone else sodomized the girl. He did not remember any force used to accomplish these acts, nor did he remember beating the girl or inserting any foreign object into her vagina. He remembered biting the girl's lip but "he didn't know what happened to the girl, that as far as he knew, he could have killed her that night."

### DEFENSE CASE

Defendant took the stand and testified to substantially the same incomplete memory he had previously related to the detective. Additionally he testified, as did his mother and sister, that he had suffered from blackouts for some years, and all three attributed these to defendant's paint sniffing.

### DISCUSSION*

. . . . . . . . . . . . . . . . . . . .

*Parts I, III, V, and VI (which required the case to be remanded for resentencing) are not published, as they do not meet the standards for publication contained in rule 976(b) of the California Rules of Court.

II. *Did sufficient evidence support defendant's conviction of forcible sodomy in concert?*

Defendant contends there was insufficient evidence to sustain his conviction of sodomy committed by force and in concert because the evidence established that Rick was not a "willing" participant in the act of sodomy. That contention rests on the premise that both he and Rick had to be willing and voluntary participants in the sodomy for the acting-in-concert enhancement to apply. We disagree.

Section 286, subdivision (d), provides: "Any person who, while voluntarily acting in concert with another person, either personally or by aiding and abetting such other person, commits an act of sodomy when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for five, seven, or nine years."

Defendant makes no attempt to refute the victim's testimony that defendant ordered Rick to take her into the back of the truck and sodomize her and that Rick obeyed the command out of fear that defendant would beat up Rick if he did not. The victim also testified that she believed Rick did not want to sodomize her but did so only because of defendant's threat. Defendant cannot argue that his order to Rick was not voluntary. If Rick did not voluntarily participate in the sodomy, that defense would be available to Rick, but there is no logical reason it should be available to defendant.

In *People* v. *Calimee* (1975) 49 Cal.App.3d 337 [122 Cal.Rptr. 658], the court concluded: "We are convinced by both the dictionary definition and by the context of the section [§ 286, subd. (d)] itself that the Legislature was concerned with gang-type, forcible, sexual assault and that the words 'voluntarily acting in concert' as used in the section were not intended to require proof of prearrangement, planning or scheme." (*Id.,* at pp. 341-342.)

Further, in *People* v. *Gutierrez* (1978) 80 Cal.App.3d 829 [145 Cal.Rptr. 823], the court rejected defendant's contention that he should not be subject to the enhanced punishment for forcible sex offenses committed in concert because only he and one other had been involved in the sexual assaults.

Most recently, the court in *People* v. *Lopez* (1981) 116 Cal.App.3d 882 [172 Cal.Rptr. 374] held there is no requirement that the defendant either participate in or be personally present during the act for the purposes of acting in concert. In arriving at that conclusion the court pointed out that it

is difficult to conceive of a factual situation in which mere aiding and abetting would not constitute acting in concert. (*Id.*, at p. 887.)

Defendant voluntarily acted in concert with Rick in committing sodomy on Ronda when he ordered Rick to commit the act and threatened Rick if he did not comply. In reason and common sense he thereby aided and abetted Rick in the commission of the crime. That is sufficient to establish "acting in concert" under the decisions reviewed. Moreover, our conclusion is consistent with the broad, general intent of the Legislature in enacting section 286, subdivision (a). (See *People* v. *Calimee, supra,* 49 Cal.App.3d at p. 341.)

IV. *Was the evidence sufficient to sustain defendant's conviction of mayhem?*

■ Defendant argues that the evidence was insufficient to sustain his conviction of mayhem because the wound to the victim's lip was not disfiguring enough to constitute mayhem within the meaning of the statute and applicable case law.

The statute to which defendant alludes is section 203. That section provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, *or slits the* nose, ear, or *lip,* is guilty of mayhem." (Italics added.)

In this case the victim testified that during the final assault defendant bit off half of her lower lip. Similarly, the victim's mother testified that "half of her bottom lip was hanging down, and a hole on the other side of it." The victim's counselor testified that when she saw the victim three days after the assault the victim's lips were extremely swollen; there were puncture wounds in the victim's lip; the puncture wounds completely perforated the lower lip and the inside of the victim's lip was very inflamed. The examining doctor at VMC testified there were lacerations to the lower lip; these were wounds in the process of healing which involved both sides of the lower lip.

All the testimony concerning the injury to the victim's lower lip is consistent only with defendant having slit that lip within the meaning of section 203. None of the cases on which defendant relies persuade us to the contrary. We conclude, therefore, that substantial evidence was presented to the jury to support its verdict that defendant was guilty of the crime of mayhem.

The judgment of conviction is affirmed and the matter is remanded for resentencing.

Franson, Acting P. J., and Hanson (P. D.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 23, 1984.