[No. B092785. Second Dist., Div. Five. Apr. 29, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
VIRGIL FARR et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II(A), the indicated portions of II(B), II(C) and the dissenting and concurring opinion by Associate Justice Grignon.

**COUNSEL**

Christine Vento and William J. Capriola, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendants, Virgil Farr and Gary Willis, appeal after they were each convicted at the conclusion of a court trial of eight felonies occasioned by their participation in numerous forcible sexual assaults and related offenses during a home invasion robbery. They raise sufficiency of the evidence and sentencing issues. In the published portion of this opinion, we address the issue of whether a defendant must personally commit one of the enumerated offenses listed in Penal Code[1] section 667.6, subdivision (d) in order to be subject to mandatory full term consecutive sentencing. We modify the judgment to delete one day of presentence conduct credit as to Mr. Willis but otherwise affirm the judgments.

## II. DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . .*

 Defendants argue that the trial court could not properly sentence them pursuant to section 667.6, subdivision (d)[2] because they were only derivatively liable for some of the sexual offenses. We begin by setting forth

---

[1]Unless otherwise noted, all future statutory references are to the Penal Code.

*See footnote, *ante*, page 835

[2]Section 667.6, subdivision (d) states: "A full, separate, and consecutive term shall be served for each violation of Section 220, other than an assault with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in

the evidence in a light most favorable to the judgment. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *Taylor* v. *Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909; *People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].) The present case involves a home invasion robbery occurring on January 26, 1992, during which various sexual assaults took place. Residing in the apartment where the incident occurred were Nelyen M. and her thirteen-year-old son, Rasheed B., as well as her two daughters, Michele J. and Keena M., aged seven and five years of age, respectively. Also residing in the apartment was Sandra M. Mr. Willis was distantly related to Nelyen M.

On the evening of January 26, 1992, Mr. Willis visited the apartment, leaving at approximately 9 or 10 p.m. He had to be asked to leave by Nelyen M. Around 11:30 p.m., Mr. Willis returned to the apartment. He was pounding on the door claiming that "somebody was going to kill him." Believing that somebody was after Mr. Willis, Nelyen M. opened the door to let him into the apartment. A codefendant, Cory Greenlaw, who was armed with a shotgun, then pushed Mr. Willis into the apartment through the front door. Mr. Greenlaw instructed Mr. Willis to lie down on the floor. Mr. Greenlaw also instructed Nelyen M. to lie across Mr. Willis's legs. Mr. Greenlaw told her, "Bitch, lay down." At that time, Mr. Farr, who was holding a gun, entered the apartment with Carvell Sibley, who was also carrying a handgun. Mr. Farr, Mr. Willis, and Mr. Greenlaw were all members of the same street gang. Mr. Sibley was a member of a different street gang. Mr. Greenlaw, Mr. Sibley, and Mr. Farr were wearing ski masks which were on top of their heads during a portion of the incident.

Rasheed B. was forced to lie down on the floor. A pillow was placed over his head. The intruders then began demanding, "Where's the fucking dope and money?" The intruders began swearing at Rasheed B. and threatening

violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions. [¶] The term shall be served consecutively to any other term of imprisonment and shall commence from the time the person otherwise would have been released from imprisonment. The term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to that term shall not be merged therein but shall commence at the time the person otherwise would have been released from prison."

to kill him. The two armed gang members who were yelling at Rasheed B. were Mr. Farr and Mr. Greenlaw. Rasheed B. denied having any drugs or money. Rasheed B. heard one of the gang members say, "Let's kill him." Rasheed B. then heard a click and passed out. One of the intruders, who was armed with a firearm and wearing a ski mask, went into the bedroom where Sandra M. was asleep, awoke her, and asked, "Where is the money and the jewelry and the dope?" The man then said, "Suck my dick, bitch." She was then forced to orally copulate the man.

At some point, Nelyen M. was ordered to lie on the floor in a hallway. Rasheed B., her son, was brought into the hallway. Mr. Farr and Mr. Greenlaw then said to Rasheed B. in reference to his mother Nelyen M. who was now unclothed, "Fuck her." As Rasheed B. was being pushed down towards his mother who was on the floor and unclothed, he felt a gun in his back. Nelyen M. protested stating that Rasheed B. was her son. Mr. Greenlaw then said: "What's up with you all. You some guy bitches." Mr. Greenlaw ordered Nelyen M. to get on her knees. Rasheed B. was then led from the hallway. Mr. Greenlaw then said, "Man, these bitches ain't nothing but guy bitches." Mr. Greenlaw then placed a foreign object in the vagina of Nelyen M. Mr. Willis then walked into the hallway and began to engage in an act of sexual intercourse with Nelyen M. Mr. Willis's attitude was nonchalant. Mr. Willis then walked back into the kitchen with his pants down around his knees. Mr. Greenlaw then directed Nelyen M. to a couch in the living room. Mr. Willis also ordered her into the living room and onto the couch. Mr. Greenlaw and Mr. Willis then engaged in an act of sexual intercourse with Nelyen M.

Meanwhile, Sandra M. was then forced into another room where she saw Mr. Willis, Rasheed B., and Nelyen M. on the floor. She was immediately placed on the floor next to them. Thereafter, Sandra M. was taken into the kitchen by one of the intruders. At this point, Mr. Willis got up from the living room floor without being told to do so and walked into the kitchen. Mr. Willis entered the kitchen with his pants down. One of the intruders who was wearing a ski mask at the time remained in the kitchen. Mr. Willis then raped Sandra M. Mr. Willis engaged in the forcible acts of intercourse during which there were two separate insertions of his penis into her vagina. At some point the armed man who had forced Sandra M. into the kitchen left. When the man left, while Mr. Willis was still engaging in an act of intercourse, Sandra M. indicated she wanted to escape through the back door of the apartment. Mr. Willis stated that the other men would kill her.

An armed man, who was carrying "like a shotgun," then entered the kitchen with 13-year-old Rasheed B. The man armed with the shotgun

instructed Sandra M. to orally copulate Rasheed B. Mr. Willis was also in the kitchen when Sandra M. was ordered to orally copulate the 13-year-old youngster. She then orally copulated Rasheed B. as directed. While this was occurring, Mr. Willis, who kept his pants down, was talking to the man armed with the shotgun in a quiet conversational manner.

Mr. Willis and the man armed with a shotgun then left the kitchen. The man who had brought Rasheed B. into the kitchen returned. The man then said to the 13-year-old, "Fuck her." Sandra M. then lay on her back and Rasheed B. attempted to engage in an act of intercourse with her. Although he could not attain an erection, his penis touched her vagina. Mr. Willis then reentered the kitchen, his pants still down around his ankles, and forced Sandra M. to engage in another act of forcible sexual intercourse. Sandra M. was praying aloud during this act of forcible sexual intercourse.

The incident came to an end when Mr. Farr and Mr. Greenlaw picked up a television and stereo from the apartment. One of the intruders said, "Man, there is a vacant apartment around the way. We can go take the TV and the stereo there." When they opened the apartment door, a police car went by. Mr. Sibley closed the front door to the apartment. One of the assailants said, "Ah, fuck man." After the police car drove away, the stereo and television set were pushed out the front door of the apartment. As the assailants fled, Sandra M. went into the bathroom and began to throw up.

Mr. Farr and Mr. Willis argue that some of their liability for the various offenses was derivative. They were convicted each of: five counts of forcible rape while acting in concert (§ 264.1[3]); two counts of forcible oral copulation while acting in concert (§ 288a, subd. (d)[4]); and one count of forcible

---

[3]Section 264.1 states, "The provisions of Section 264 notwithstanding, in any case in which the defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed an act described in Section 261, 262, or 289, either personally or by aiding and abetting the other person, that fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, the defendant shall suffer confinement in the state prison for five, seven, or nine years."

[4]Section 288a, subdivision (d) states: "Any person who, while voluntarily acting in concert with another person, either personally or by aiding and abetting that other person, commits an act of oral copulation (1) when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person, or (2) where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat, or (3) where the victim is at the time incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act shall be punished by imprisonment in the state prison for five, seven, or nine years. Notwithstanding the appointment of

lewd act on a child (§ 288, subd. (b))[5]; first degree residential burglary (§ 459); and a single count of residential robbery. (§§ 211, 213, subd. (a)(1).) Further, Mr. Farr was found to have: been armed with a firearm (§ 12022, subd. (a)(1)); used a firearm in connection with certain sex offenses (§ 12022.3, subd. (a)); and used a firearm in connection with certain nonsex offenses. (§ 12022.5, subd. (a).) As to Mr. Willis, he was found to have been armed with a firearm. (§ 12022, subd. (a)(1).) As to the sex offenses, the trial court found that it was compelled to engage in full term consecutive sentencing pursuant to section 667.6, subdivision (d).

Defendants argue that because they did not personally commit all of the sexual assaults, they are not subject to mandatory full term consecutive sentencing under section 667.6, subdivision (d). Their argument is premised in large part on the 1986 amendment to section 667.6, subdivision (d) which they argue requires a defendant personally commit one of the enumerated sexual assaults in order for full term mandatory sentencing to be necessitated. (Stats. 1986, ch. 1431, § 1, p. 5129.) Specifically, they rely on the second paragraph of section 667.6, subdivision (d), enacted in 1986, which states: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, *the defendant* had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (Italics added.) Defendants cite to the italicized reference to "the defendant"

---

a conservator with respect to the victim pursuant to the provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code), the prosecuting attorney shall prove, as an element of the crime described under paragraph (3), that a mental disorder or developmental or physical disability rendered the alleged victim incapable of giving legal consent."

[5]Section 288, subdivisions (a) and (b) provides: "(a) Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] (b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] (2) Any person who is a caretaker and commits an act described in subdivision (a) upon a dependent adult by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, with the intent described in subdivision (a), is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

and argue that no mandatory full term consecutive sentencing liability can arise unless the accused personally commits the sexual assault. ■ Further, defendants rely on the following language in *People* v. *Walker* (1976) 18 Cal.3d 232, 241-242 [133 Cal.Rptr. 520, 555 P.2d 306] which sets forth the parameters of derivative liability for an enhanced sentencing provision: "Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act. Such a direction is found in section 31 which fixes responsibility on an aider and abettor for a crime personally committed by a confederate. But the statute which defines aiders and abettors as principals in the commission of a criminal offense does not also purport to impose additional derivative punishment grounded on an accomplice's personal conduct, as those statutes which provide for such increased punishment ' "do not define a crime or offense but relate to the penalty to be imposed under certain circumstances." ' [Citations.] Hence the rules which make an accused derivatively liable for a crime which he does not personally commit, do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime." In *Walker*, a decision interpreting section 12022.5, the Supreme Court focused on two factors in concluding there was no derivative liability and there must be personal use of the firearm in order for the enhanced sentence to apply.

■ However, the present case involves the application of a separate sentencing scheme—not the interpretation of an enhancement as was the case in *Walker*. Section 667.6, subdivision (d) does not define crimes nor the elements of enhancements. Rather, section 667.6, subdivision (d) defines a sentencing scheme which sets forth the sentences to be imposed once a conviction of an enumerated sex offense occurs. The California Supreme Court has held, "The Legislature has established a special sentencing scheme for multiple sexual offenses." (*People* v. *Craft* (1986) 41 Cal.3d 554, 558 [224 Cal.Rptr. 626, 715 P.2d 585].) ■ For example, section 667.6, subdivision (c) is an alternative sentencing scheme for the enumerated offenses. The California Supreme Court has repeatedly so held in connection with section 667.6, subdivision (c). (*People* v. *Scott* (1994) 9 Cal.4th 331, 341 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [" 'The Legislature, by devising a distinctly harsh sentencing scheme [§ 667.6, subd. (c)], has emphasized the seriousness with which society views each separate unconsented sexual act, even when all are committed on a single occasion . . . .' "]; *People* v. *Harrison* (1989) 48 Cal.3d 321, 330 [256 Cal.Rptr. 401, 768 P.2d 1078] [same]; *People* v. *Jones* (1988) 46 Cal.3d 585, 592 [250 Cal.Rptr. 635, 758 P.2d 1165] ["As a more severe consecutive sentencing alternative to the section 1170.1 formula, section 667.6, subdivision (c), permits the imposition of a full, separate, and consecutive term 'for each violation of' the

enumerated sex offenses."]; *People* v. *Tassell* (1984) 36 Cal.3d 77, 91 [201 Cal.Rptr. 567, 679 P.2d 1] disapproved on another point in *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 386 [27 Cal.Rptr.2d 646, 867 P.2d 757] ["[S]ection 667.6 provides, as an alternative to consecutive sentencing under section 1170.1, a much harsher sentencing scheme for persons convicted of forcible sex offenses. This harsher provision allows the court in its discretion to sentence a defendant to full term consecutive sentences rather than the 'one-third of the middle term' consecutive sentence formula set forth in section 1170.1, subdivision (a)."]; *People* v. *Belmontes* (1983) 34 Cal.3d 335, 345-346 [193 Cal.Rptr. 882, 667 P.2d 686] ["The entire content of that provision (§ 667.6, subd. (c)) points towards its being a separate and alternative sentencing scheme for offenses that fall within its ambit."].)

■ Further, section 667.6, subdivision (d) is a separate sentencing scheme, different from both sections 667.6, subdivision (c) and 1170.1. (*People* v. *Jones, supra*, 46 Cal.3d at p. 595 ["[S]ubdivision (c) features the following prefatory clause which is conspicuously absent from subdivision (d): 'In lieu of the term provided in Section 1170.1 . . . .' This passage discloses a legislative purpose—one which we have already discussed— which must pervade any discussion of subdivision (c): that it was intended to provide, in the context of violent sex offenders, a discretionary sentencing alternative to the standard consecutive sentencing formula in section 1170.1. [Citations.] Subdivision (d) contains no similar language and is not an alternative as such, but rather constitutes a mandatory consecutive sentencing scheme applicable only when a defendant has been convicted of two or more [enumerated sex offenses]."].) Other separate sentencing schemes include those for recidivists. (§§ 667, subds. (b)-(i), 1170.12; *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 527 [53 Cal.Rptr.2d 789, 917 P.2d 628] ["The Three Strikes law, like the older 'Habitual Offender Law' (§ 667.7) construed in *People* v. *Jenkins* (1995) 10 Cal.4th 234 [40 Cal.Rptr.2d 903, 893 P.2d 1224], [243-245], articulates an alternative sentencing scheme for the current offense rather than an enhancement."]; accord, *People* v. *Hazelton* (1996) 14 Cal.4th 101, 106 [58 Cal.Rptr.2d 443, 926 P.2d 423]; *People* v. *Alvarez* (1996) 14 Cal.4th 155, 247 [58 Cal.Rptr.2d 385, 926 P.2d 365].) Another separate sentencing scheme provides enhanced punishment for habitual violent offenders. (§ 667.7; *People* v. *Jenkins* (1995) 10 Cal.4th 234, 241 [40 Cal.Rptr.2d 903, 893 P.2d 1224] ["Section 667.7 creates a self-contained sentencing scheme for habitual violent offenders . . . ."].) Yet another sentencing scheme is the Uniform Determinate Sentencing Act of 1976. (§ 1170 et seq.; *People* v. *Hall* (1994) 8 Cal.4th 950, 952 [35 Cal.Rptr.2d 432, 883 P.2d 974] ["Under the Uniform Determinate Sentencing Act of 1976 (. . . § 1170 et seq.), the Legislature has established an elaborate sentencing scheme that prescribes terms of imprisonment for enumerated offenses and sets forth sentencing 'enhancements,' which, under

specified circumstances, increase the length of a defendant's incarceration." (Fn. omitted.)].) ▮ None of the foregoing sentencing schemes have been construed to require the accused personally commit the offense in order to be subject to the specified sentences. Like section 667.6, subdivision (d), each of the foregoing sentencing schemes comes into play when a defendant is convicted of an enumerated offense. *Walker* involved an enhancement and particular sentence for use of a firearm—not a separate sentencing scheme. The present case involves a sentencing scheme where in the words of our Supreme Court, consecutive sentencing pursuant to section 667.6, subdivision (d) results from a "conviction" for an enumerated sex offense or when the accused is "convicted" of such crimes. (*People* v. *Jones*, *supra*, 46 Cal.3d at p. 595.) *Walker* is hence not the controlling authority.

Impliedly recognizing this problem, defendants argue that the 1986 amendment reflected a legislative intention to impose on section 667.6, subdivision (d) a requirement that the accused personally commit one of the enumerated sex offenses. To begin with, the Legislature did not explicitly require the accused personally commit any of enumerated offenses in order for section 667.6, subdivision (d) to apply. Further, there would be some incongruity to such a requirement given the fact that one of the enumerated offenses, rape in concert in violation of section 264.1, includes persons who aid and abet in the actual sexual act. (*People* v. *Champion* (1995) 9 Cal.4th 879, 933 [39 Cal.Rptr.2d 547, 891 P.2d 93]; *People* v. *Adams* (1993) 19 Cal.App.4th 412, 429 [23 Cal.Rptr.2d 512]; *People* v. *Caldwell* (1984) 153 Cal.App.3d 947, 951 [200 Cal.Rptr. 508]; *People* v. *Lopez* (1981) 116 Cal.App.3d 882, 886 [172 Cal.Rptr. 374].) In fact, criminal liability for a rape in concert can occur even if the accused was not personally present when a confederate commits the sexual assault. (*People* v. *Caldwell*, *supra*, 153 Cal.App.3d at p. 951.) Section 667.6, subdivision (d) specifically lists section 264.1 as an offense which if committed on separate occasions must result in full term consecutive sentencing.

▮ However, apart from the absence of any explicit direction by the Assembly and Senate that the accused personally commit the enumerated offenses and the logical incongruity of such analysis; the legislative history of the 1986 amendment contains no evidence, none at all, of an intention on the part of the Legislature to require the defendant to personally commit one of the listed sexual offenses in section 667.6, subdivision (d) in order to be subject to the mandatory full term consecutive sentencing requirement. The explicit purpose of the 1986 amendment was to modify the California Supreme Court decision in *People* v. *Craft*, *supra*, 41 Cal.3d at page 561. In *Craft*, the Supreme Court construed the "separate occasions" language in the then existing version of the section 667.6, subdivision (d) as follows:

"Specifically, we hold that subdivision (d) only applies to offenses against the same victim between which the perpetrator temporarily lost or abandoned the opportunity to continue his attack: such opportunity is lost when the victim becomes free of any ongoing criminal activity; it is abandoned when the offender keeps the victim within his control but engages in some significant activity unrelated to continuing his attack. This interpretation effectively distinguishes multiple offenders who commit crimes against a single victim on separate occasions from those who merely assault a victim several times in one uninterrupted sequence of events." (41 Cal.3d at p. 561) The 1986 amendment to section 667.6, subdivision (d), which added the second paragraph, was specifically intended to abrogate the foregoing holding of *Craft*. In *People* v. *Pena* (1992) 7 Cal.App.4th 1294, 1314 [9 Cal.Rptr.2d 550], our colleagues in Division Seven of this appellate district held: "However, this interpretation of 'separate occasions' was specifically overruled in the 1986 amendment to section 667.6, subdivision (d). In amending this section the Legislature specifically stated: 'It is the intent of the Legislature in the enactment [of this amendment] to abrogate the decision in *People* v. *Craft* [citation], and to establish an objective test for determining whether sex crimes against a single victim occurred on separate occasions.' (Stats. 1986, ch. 1431, § 2, p. 5129.)" Legislative committee reports relating to the various bills which ultimately were subject to the legislation in its final form indicate that the only concern of the Legislature in amending section 667.6, subdivision (d) in 1986 was to abrogate the *Craft* definition of separate occasions and replace it with a different test. (See Sen. Judiciary Com. Rep. on Sen. Bill No. 2428 (1985-1986 Reg. Sess.) as amended May 21, 1986, pp. 7-8 ["This bill states that its intent is to abrogate the *Craft* decision with respect to determining whether there was an abandonment by the perpetrator in the opportunity to continue a sexual attack and to specifically establish the factors the court would be required to consider . . . ."]; Sen. Judiciary Com., Rep. on Sen. Bill No. 2428 (1985-1986 Reg. Sess.) as amended May 7, 1986, p. 2 ["The purpose of this bill is to abrogate the California Supreme Court's interpretation of 'separate occasions' . . . ."].) Further, when the legislation was reported out by the conference committee, no mention was made of an intention to require a sexual assailant personally commit an enumerated offense before full term consecutive sentencing would be mandatory. (See Conference Rep., Analysis of Sen. Bill No. 2295 (1985-1986 Reg. Sess.) p. 1.) The Legislative Counsel's Digests when the bill was reported out of the conference committee in the format in which it was finally adopted indicated that the statute's purpose was to change the *Craft* definition of "separate occasions." (Legis. Counsel's Dig., Assem. Bill No. 2295 (1985-1986 Reg. Sess.) Proposed Conf. Rep. No. 1 (Aug. 26, 1986) pp. 1-2; Legis. Counsel's Dig., Assem. Bill No. 2295, Stats.

1986 (Reg. Sess.) Summary Dig. p. 555.) Most importantly, as noted in *People* v. *Pena*, *supra*, 7 Cal.App.4th at page 1314, the Legislature explicitly stated that the purpose of the 1986 enactment was to materially alter the *Craft* holding concerning "separate occasions." ▉ Hence, there is no evidence the Legislature in 1986, or any other time, intended to condition full term consecutive sentencing on a requirement that the accused personally commit one of the enumerated crimes. We conclude that there is no requirement that defendants personally have committed the enumerated sexual offenses in section 667.6, subdivision (d) in order for the court to be required to have imposed full term consecutive sentencing.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

### III. Disposition

As to Gary Willis, the abstract of judgment is to be modified to delete one day of presentence credit. In all other respects, the judgments are affirmed.

Godoy Perez, J., concurred.

**GRIGNON, J.,** Concurring and Dissenting.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

A petition for a rehearing was denied May 8, 1997, and appellant's petitions for review by the Supreme Court were denied August 13, 1997.

---

*See footnote *ante*, page 835.