Filed 2/19/25  P. v. Albatat CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MOHAMMED MUHSIN ALBATAT,<br><br>    Defendant and Appellant. | D083394<br><br><br>(Super. Ct. No. SCE417140) |


APPEAL from a judgment of the Superior Court of San Diego County, Herbert Exarhos, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Mohammed Muhsin Albatat of mayhem (Pen. Code,[1] § 203), among other crimes, on the prosecution's theory he "unlawfully and maliciously slit the lip" of the victim. On appeal, he asserts the mayhem conviction must be reversed because there was insufficient evidence that he "maliciously disfigured" the victim. Because that is not an element of mayhem as charged here, we reject Albatat's sole claim of error and affirm the judgment.

## BACKGROUND

S. Zamora, a gardener of 16 years, was working at an El Cajon apartment complex on the morning of April 5, 2023. While Zamora was using a handheld "weed eater" to trim the grass, Albatat came out of one of the apartments in an "aggressive" stance and yelled at Zamora that he did not want to hear any noise. Zamora turned off his tool and explained he needed to do his work. Albatat said he did not care and suddenly, without provocation, punched Zamora in the face with a clenched fist. Zamora's body "went limp," his knees "went weak" and he lost his balance, although he did not fall completely to the ground.

Zamora called 911. He was in pain and bleeding a lot from the right side of his lip. The responding officer found Zamora with a bloody mouth from an injury the officer described as "a laceration on his upper lip on the right-hand side, approximately one half to three quarters inch" that was "completely separated . . . completely split open." The jury received in evidence photographs taken of Zamora's injury on the day of the assault.

---

[1]     All further undesignated statutory references are to the Penal Code.

2

Zamora went to a hospital where he underwent "exploration and reconstruction" surgery by Alexander Kim, M.D., a specialist in facial reconstructive surgery. Dr. Kim explained the lip is comprised of three layers: the vermilion, vermilion border, and oral mucosa. The vermilion is the skin layer on the outside, "the pink part of your lip" where "one might apply lipstick." The vermilion "extends to the inner portion" called the "oral or buccal mucosa," or what might be referred to as "the gums on the back of the lip and . . . [extend[ing] to the inner part of the cheek." The vermilion border is the transition between the vermilion and facial skin.[2]

Dr. Kim testified Zamora had injuries to all three layers of the lip. According to his medical records, which were admitted into evidence, Zamora suffered a "significant open wound of the face with complex lacerations." The wound appeared at "the mid face and lower cheek with devitalized crushed skin and muscle" and with a "full-thickness lip laceration involving [the] vermilion border 2.5 cm," which was noted as "greater than half the vertical height of the lip." Dr. Kim testified Zamora's laceration was through the vermilion border and "through the lip, and . . . extend[ing] to the inside of the

---

2      Although Dr. Kim did not specifically define "vermilion border," according to the Merriam-Webster Medical Dictionary, it is "the exposed pink or reddish margin of a lip" (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/medical/vermilion%20border> [as of Feb. 19, 2025], archived at <https://perma.cc/HJ2E-AHXG>.) We take judicial notice of the definition. (Evid. Code, § 451, subd. (e); see *California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1445 ["Moreover, mandatory language in Evidence Code section 451, subdivision (e) requires judicial notice be taken of '[t]he true signification of all English words and phrases.' "]; *Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 256 [" 'true signification' " of a word is best derived from dictionary definitions].)

mouth up towards the . . . mid face or the lower cheek as it connects to the lip."

After undergoing exploratory and reconstructive surgery, Zamora received approximately 25 absorbable, internal and external sutures. He was in pain approximately seven days out from the surgery and had difficulty eating and drinking for about a month after. At the time of trial, he had a "barely" visible scar on the outside of his lip. Inside his lip, he had permanent scarring which he described as "the skin is a little lifted, . . . it's altered."

The jury convicted Albatat of mayhem (§ 203; count 1), assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), and battery with serious bodily injury (§ 243, subd. (d); count 3). It also found true the allegations Albatat personally inflicted great bodily injury on Zamora within the meaning of section 12022.7, subdivision (a), as to count 2, and section 1192.7, subdivision (c)(8), as to count 3.

Albatat later admitted he committed all three offenses while on parole from state prison (§ 1203.085, subd. (b)); that he suffered three prior felony convictions that qualified as serious felony priors (§§ 667, subd. (a)(1), 668, and 1192.7, subd. (c) and strike priors (§§ 667, subds. (b)–(i), 1170.12, and 668); and that one of the six alleged aggravating factors was present to justify an upper term sentence (Cal. Rules of Court, rule 4.421(b)(3) [he has served a prior prison term]).

At sentencing, the trial court granted Albatat's *Romero*[3] motion and dismissed two of the strike priors and one of the serious felony priors. The court sentenced Albatat to 26 years in prison, consisting of the upper term of

---

[3]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

4

8 years on the mayhem count, doubled for one strike, plus 10 years for two of the serious felony priors.  The court stayed the sentence on counts 2 and 3 pursuant to section 654.

DISCUSSION

In his sole claim of error on appeal, Albatat asserts substantial evidence does not support the mayhem conviction.  Specifically, he argues the conviction must be reversed because the prosecution did not prove he "maliciously disfigured Zamora with a single punch."

In reviewing and rejecting this claim, "we must 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.  (*People v. Young* (2005) 34 Cal.4th 1149, 1175.)  We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses.  (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.)  We do not reverse on an insufficient evidence claim "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 203 provides, "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem."  (See *People v. Santana* (2013) 56 Cal.4th 999, 1003 (*Santana*).)  As our Supreme Court explained, "Section 203

5

generally prohibits six injurious acts against a person, three that specify a particular body part and three that do not: (1) dismembering or depriving a part of someone's body; (2) disabling or rendering useless a part of someone's body; (3) disfiguring someone; (4) cutting or disabling the tongue; (5) putting out an eye; and (6) slitting the nose, ear or lip. (See CALCRIM No. 801 [delineating six types of injuries].)" (*Santana*, at p. 1003.) Because the statute specifies these six injurious acts *in the disjunctive*,[4] any one of these will support a conviction of mayhem. (See *People v. Caldwell* (1984) 153 Cal.App.3d 947, 952 (*Caldwell*).)

As alleged in the operative charging document, the People tried Albatat for mayhem on the theory he "slit the lip" of Zamora. The People did not proceed on any theory that Albatat committed mayhem by disfiguring or disabling Zamora. Thus, the trial court properly instructed the jury with a modified CALCRIM No. 801,[5] as follows:

> "The defendant is charged in Count 1 with Mayhem in violation of Penal Code section 203.
>
> "To prove that the defendant is guilty of mayhem, the People must prove that the defendant unlawfully and maliciously: [¶] Slit someone's lip.
>
> "Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to annoy or injure someone else." (Italics and boldface omitted.)

---

[4]     Section 203 contains the word "or" seven times. CALCRIM No. 801 contains six different descriptions of conduct, each of which qualifies as an act of mayhem, with each description separated by "[OR]" indicating a choice or selection to be made based on the evidence in the case under consideration.

[5]     Albatat does not raise an issue of instructional error on appeal.

Ignoring the slit lip theory on which he was prosecuted, Albatat contends the evidence was insufficient to establish that he "*maliciously disfigured*" Zamora with "a single punch." (Italics added.) Doing so, he focuses on the circumstances that Zamora did not fall to the ground or become unconscious, had "absorbable stitches" that fell out seven days later, was "no longer in pain," had a "scar that is barely noticeable," and did not require further medical treatment. We reject Albatat's contention because it lacks merit.

Mayhem based on a slit lip does not require disfigurement, permanent injury, or permanent scarring.[6] "By defining 'slitting the nose, ear or lip' as an injurious act sufficient to constitute mayhem, 'the Legislature itself established [the injuries'] requisite level of seriousness in section 203' . . . , finding those injuries sufficiently egregious to be considered a cruel and savage crime." (*People v. Turner* (2019) 37 Cal.App.5th 882, 890–891, quoting *Santana, supra*, 56 Cal.4th at p. 1010.) The Court of Appeal in *Turner*, a case cited by Albatat, "found *no California case* . . . finding section 203 requires slitting the nose, ear or lip to be a permanent injury or to leave a permanent scar . . . for purposes of mayhem" under that theory. (*Turner*, at p. 891, italics added.) "The cases referencing the permanent injury graft on

---

[6] Accordingly, Albatat's reliance on cases involving a disfigurement theory, or other theory not involving a slit lip, is misplaced. (See, e.g., *People v. Keenan* (1991) 227 Cal.App.3d 26, 32–33 [defendant who burned victim's breasts with lit cigarette during a home invasion robbery and sexual assault, leaving victim with permanent scars, prosecuted for mayhem on a disfigurement theory]; *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1559–1560 [defendant who brutally slashed victim's chest with box cutter, nearly severing her left breast, charged with mayhem on a disfigurement theory]; *Goodman v. Superior Court* (1978) 84 Cal.App.3d 621, 622 [defendant who stabbed victim in the face prosecuted for mayhem on disfigurement theory].)

7

to section 203 have done so in the context of a disfiguring injury only." (*Ibid*.; see also *Santana*, at p. 1010.) The *Turner* court thus rejected the defendant's argument that a slit lip theory, as opposed to a disfigurement theory, requires permanent injury or serious scarring. (*Turner*, at p. 891.)

*Caldwell*, *supra*, 153 Cal.App.3d 947, another case cited by Albatat, is instructive. There the defendant bit the victim's lower lip, resulting in lacerations which were in the process of healing. (*Id*. at p. 952.) The court rejected the defendant's argument "that the evidence was insufficient to sustain his conviction of mayhem because the wound to the victim's lip was not disfiguring enough to constitute mayhem within the meaning of the statute and applicable case law." (*Ibid*.) Emphasizing the disjunctive language of the statute, the court held that section 203 does not require evidence of disfigurement *in addition* to evidence of the slit lip; i.e., slitting a victim's lip, in and of itself, is an act of mayhem under section 203. (*Caldwell*, at p. 952.)

Although Albatat does not develop the argument, to the extent he argues "a single punch" cannot be the basis of mayhem, we reject that argument too. The method used to inflict the relevant injury, including a slit lip, is not dispositive. (See *People v. Johnson* (2018) 21 Cal.App.5th 267, 281 [rejecting defendant's argument that he "punctured" the victim's lip, not "slit it" and construing "slitting to include such other mechanisms as puncturing and biting as long as the injury inflicted is not slight or temporary"]; *Caldwell*, *supra*, 153 Cal.App.3d at p. 952 [defendant caused victim's slit lip by biting it].) In *People v. Hayes* (2004) 120 Cal.App.4th 796, the Court of Appeal held a *Flannel*[7] or imperfect self-defense does not apply to mayhem.

---

7      *People v. Flannel* (1979) 25 Cal.3d 668.

In so holding, the court observed: "[T]he essential distinction between mayhem and assault is not the actor's mental state but *the result achieved*: 'If a person unlawfully strikes another, not with the specific intent to commit the crime of mayhem, and *the blow so delivered results in the loss or disfigurement of a member of the body of the assaulted party or in putting out his eye, the crime is nevertheless mayhem.*' " (*Id.* at p. 805, second italics added.) "So long as general criminal intent is present, the requisite malice may be inferred from the fact of the injury." (*Ibid.*) And Albatat does not contend the evidence is insufficient as to his malice or general criminal intent in striking Zamora.

Albatat fails to grapple with the evidence regarding the severity of the injury he inflicted on Zamora, at times minimizing it to a mere "cut lip." On this record, we conclude the evidence was sufficient to support the jury's finding that Albatat committed mayhem by slitting Zamora's lip. The noun "slit" is defined in the Merriam-Webster dictionary as "a long narrow cut or opening."[8] The verb "slit" means "to make a slit in," "to cut off or away: SEVER" or "to form into a slit."[9] We have reviewed the photographs taken of Zamora's injury on the day of the assault and disagree with Albatat's characterization it is a mere cut lip. Consistent with the responding officer's observations, the photographs show Zamora's upper lip on the right-hand side was "*completely separated . . . completely split open.*" (Italics added.)

---

[8] Definition of slit, noun, Merriam-Webster Dictionary Online (2025) <https://www.merriam-webster.com/dictionary/slit> [as of Feb. 19, 2025], archived at <https://perma.cc/5RNV-L3CV>.

[9] Definition of slit, verb, Merriam-Webster Dictionary Online (2025) <https://www.merriam-webster.com/dictionary/slit> [as of Feb. 19, 2025], archived at <https://perma.cc/3JBP-FMXW>.

9

Dr. Kim explained Zamora suffered a significant wound "with complex lacerations" that cut across all three tissue layers of the lip, including the vermilion, vermilion border, and oral mucosa, and there was "devitalized crushed skin and muscle," and which required reconstructive surgery to normalize his appearance. Applying the common meaning of "slit," we conclude there is substantial evidence to support the mayhem conviction.

## DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:

DATO, Acting P. J.

RUBIN, J.

10