[Crim. No. 6869. Fourth Dist., Div. One. June 24, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LEE CALIMEE, Defendant and Appellant.

338

[redacted]

## COUNSEL

Walter Maund and Paul Bell, under appointments by the Court of Appeal, William F. Sink for Defendant and Appellant.

Evelle J. Younger, Attorney General, Harley D. Mayfield and Bernard A. Delaney, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

AULT, J.—Defendant Robert Lee Calimee was convicted by a jury of sodomy with a special finding that he acted in concert with and aided and abetted Russell Sheen Mathews in committing sodomy on the victim with force and violence and against his will (Pen. Code, §§ 286 & 286.1). He was committed to the California Youth Authority for the term prescribed by law which, under Penal Code section 286.1, is from five years to life. Without the special finding, the term of confinement would have been not less than one year (Pen. Code, § 286).

Calimee appeals, contending the court prejudicially erred in explaining to the jury the meaning of the term "acting in concert" as used in Penal Code section 286.1. The meaning of the term has not been defined in California, and the case is one of first impression.

### FACTS

Only a brief recital of the sordid facts is necessary to our discussion of the issue. Calimee was convicted as an aider and abettor. During January and February 1974 he was one of seven men confined in a small cell in the San Diego County jail. The others were Mathews, Holloman, Riley, Taylor, Metcalf and K. (the victim). They were so crowded that Mathews, K. and another inmate had to sleep on a mattress on the floor.

On January 31, using jailhouse vernacular and in the presence of everyone in the cell, Mathews accused K. of being a homosexual. K. denied he was a homosexual. Mathews threatened to beat up K. and commit sodomy upon him if a note he sent out to another cell tank came back confirming that K. was a homosexual. That night, about an hour after "lights out," Mathews, who was a big man, told K. " . . . looks like either you're going to have to give it up or else you're going to get the . . . knocked out of you first." He then talked to others in the cell to get them to back him up. He ordered Riley, who was afraid of him, to start a fight with K. When K. seemed to get the better of the fight, Mathews and others in the cell joined in the effort to subdue him. K. was severely beaten by Mathews and the others. He sustained a broken rib and bruises and contusions on his face, head and body. There was testimony that Calimee joined in the effort to subdue K., striking him in the head and face with his fists.

Finally Mathews kicked K. in the face, knocking him across the cell. He told K. to put out and to take off his pants. K. removed his pants after Mathews hit him several more times, and he was forced to lie on his stomach on a mattress on the floor. Holloman then committed an act of sodomy on K. When K. was crying out and struggling to get away, Calimee, who was sitting on the bunk near his head told him to "shut up and stay still" and hit him several times on the head and face with his fists. After Holloman was finished, Mathews then committed a second act of sodomy on K.

Calimee did not personally engage in an act of sodomy with K.

### DISCUSSION

Penal Code section 286.1 provides: "The provisions of Section 286 notwithstanding, in any case in which defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim committed sodomy upon a human being, either personally or by aiding and abetting such other person, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from five years to life."

During its deliberations the jury requested further instructions from the court, including a clarification of the instruction on aiding and abetting and a definition of the term "acting in concert." In answer to these specific requests, the trial judge reread the instruction he had given on aiding and abetting using the following language: "All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

"A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime."

The judge then told the jury: "The term 'acting in concert' is synonymous with the term 'aiding and abetting' as I have described to you just a few moments ago."

The instruction was given over the objection of Calimee's attorney who suggested the jury be instructed: ". . . that acting in concert is action that has been planned, arranged, adjusted or agreed on between parties acting together pursuant to some design or scheme." Citing numerous dictionary definitions, Calimee makes the same contention on appeal.

Penal Code section 286.1 was enacted in 1967 together with Penal Code sections 264.1 and 288b. Each of the sections provides for an increased punishment (five years to life) for a defendant who commits sodomy (§ 286.1), rape (§ 264.1) or oral copulation (§ 288b), either personally or as an aider or abettor, while "voluntarily acting in concert with another person by force or violence and against the will of the victim." The obvious purpose of the section is to provide increased punishment where there is a gang sexual assault and to insure that those who participate in such assaults, either by personally engaging in the ultimate sexual act or by voluntarily helping others to accomplish it, receive the enhanced punishment.

While the terms "concert" and "concerted" sometimes imply a prearranged plan or design, it does not follow that the words are always used with that meaning. Webster's Third International Dictionary (1971) defines the specific term "in concert" as "together," giving as an example "he acted in concert [together] with the others." Moreover, the wording of the section itself makes it clear that the words "voluntarily acting in concert" are intended to include both those who personally engage in the forcible sexual act and those who aid and abet that person in accomplishing it. In the sense that the term "acting in concert" includes the principal actor as well as those who aid and abet, the court's statement that the term was synonymous with aiding and abetting is not entirely accurate. Here, however, there was neither evidence nor claim that Calimee actually committed sodomy upon the victim, and the definition given by the court was wholly accurate when applied to the facts of the case.

We are convinced by both the dictionary definition and by the context of the section itself that the Legislature was concerned with gang-type, forcible, sexual assault and that the words "voluntarily acting in concert"

as used in the section were not intended to require proof of pre-arrangement, planning or scheme. No error occurred.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1975.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.