[Crim. No. 14190. Fourth Dist., Div. Two. Mar. 12, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DOMINGUEZ LOPEZ, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Janice L. Feinstein, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GARDNER, P. J.—In this case we hold that to sustain a finding of acting in concert in forcible rape there is no requirement that the defendant either personally participate in the physical act or be personally present during the physical act.

Defendant was convicted of three counts of robbery (Pen. Code § 211) and one count of forcible rape while acting in concert (Pen. Code § 261, subd. 2). Armed and use allegations were found to be true.

## The Ordeal of Mr. and Mrs. H.

One night, defendant and a companion forced their way into the home of Mr. and Mrs. H. Defendant was armed with a shotgun. Mrs. H. ran to the bathroom and closed the door. Defendant kicked the door open and ordered Mrs. H. to come out. Mr. and Mrs. H. were then ordered to lie on the bed. Defendant placed the shotgun barrel under

Mrs. H.'s dress and touched her buttocks. His companion then touched Mrs. H.'s buttocks with his hand. They both laughed.

A robbery took place. No issue is made as to the sufficiency of the evidence on these charges so we need only discuss the facts relative to the rape.

Defendant's companion then unzipped Mrs. H.'s dress and bit her breast. The defendant tied and gagged Mr. H. while his companion did the same with Mrs. H. The defendant then directed Mr. H. to move across the bed and up against the headboard. Mr. H. did so and defendant placed some pillows over his head. At this time the two men conversed in Spanish and Mr. H. heard them call his wife a bitch. Defendant then left the bedroom and was heard rummaging through the house. His companion raped Mrs. H. The two robbers then left after telling Mr. and Mrs. H. not to move.

Defendant was also convicted of the robbery of a Der Wienerschnitzel, but, again, no contention is made as to the substantiality of the evidence on that count and, again, we need not further discuss it.

### AIDING AND ABETTING

Defendant's first contention is that there is no substantial evidence that he aided and abetted in this rape. We disagree.

The record clearly shows that the defendant aided, abetted and encouraged the rape. While he was not personally present during the physical assault, his actions prior thereto show clearly that he aided and encouraged this assault.

Defendant was the one with the gun. He stuck his gun under Mrs. H.'s dress and against her buttocks. When his companion did the same, they both laughed. Then he was present when his companion unzipped Mrs. H.'s dress and bit her breast. When he and his companion spoke, they referred to Mrs. H. as a bitch. Most important, defendant was the one who moved Mr. H. over on the bed so that his partner could commit the rape.

This record shows rather forcefully that the defendant knew of his companion's intent to rape Mrs. H. and that he helped him out in his plan.

ACTING IN CONCERT

Defendant next contends that even if the evidence is sufficient to sustain a finding of aiding and abetting, there is insufficient evidence that he was acting in concert since he did not participate in or was he personally present during the physical act of raping the victim. We do not agree.

According to the defendant since the punishment for actually participating in the rape or aiding and abetting in the rape is punishable, under Penal Code section 264, for three, six or eight years, and the penalty for rape when acting in concert is five, seven or nine years, under Penal Code section 264.1, the imposition of the additional penalty for acting in concert requires that he either physically take part in the rape or that he be personally present during the rape.

The trouble with this argument is that it flies in the face of common sense and the language of the statute. Penal Code section 264.1 provides that, "The provisions of Section 264 notwithstanding, in any case in which defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed the rape, either personally *or by aiding and abetting such other person* .... " [italics added] is to receive the enhancement punishment. It was necessary to use the "acting in concert language" to cover *both* the person who committed the physical act and the person who aided and abetted. We presume that the Legislature meant exactly what it said that when two or more persons voluntarily act in concert either personally or by aiding and abetting each other commit the rape, there is to be an enhanced penalty. There is nothing very mysterious about this. Rape is never very funny and one-on-one rape is hardly a laughing matter. However, it is even more reprehensible when committed by two or more persons. The language "acting in concert" is necessary because if the section had already assessed the actual punishment for aiding and abetting then the aider and abettor would actually receive more punishment than the person committing the physical act. Thus, by using the "in concert" this section covers both the person who commits the physical act and the person who aids and abets.

But, says the defendant, in spite of this clear legislative language, the Legislature really meant to punish only the one who personally committed the physical act or who was present when the act was committed.

His argument is ingenious but not very persuasive. His argument goes something like this:

In *People* v. *Calimee* (1975) 49 Cal.App.3d 337 [122 Cal.Rptr. 658], the court held that acting in concert did not require proof of pre-arrangement, planning or scheme. There, the court recognized Webster's definition of the term "concert" which definition included the word "together." From this, he leaps to the conclusion that together means physical presence. Of course, that is not what Webster says. Webster says that concert means to plan together, to settle by agreement, to agree, to plan and devise. So Webster really offers the defendant no valid support. Actually, reference to *Calimee* is unfortunate from the standpoint of the defendant. There, the judge told the jury that the term "acting in concert" is synonymous with the term "aiding and abetting." The judgment was affirmed and the issue was whether the court had erred in failing to instruct that acting in concert necessitated planning. The court simply held that the section was not intended to require proof of prearrangement, planning or scheme. (See also *People* v. *Barnett* (1976) 54 Cal.App.3d 1046 [127 Cal.Rptr. 88].)

If the Legislature wanted to limit section 264.1 to gang rape with only the active participants being held culpable, it could easily have done so simply by saying that this situation was restricted to those cases in which a defendant *personally* took part in the act or was *personally* present when the act was being consummated. The Legislature has had no hesitation in imposing those limitations in specific situations. For instance, the *personal* use of a deadly weapon is demanded in Penal Code section 12022.5 as is the *personal* use of a firearm in section 1203.06. Another example of legislative specificity is one of the former mutations of Penal Code section 190.2, subdivision (c)(3)(i), in establishing standards for the imposition of the death penalty. It provided that a defendant be *personally present* during the commission of the act. Penal Code section 264.1 makes no such provision. It deliberately avoids the results suggested by the defendant by its plain and unambiguous language.

Actually, it is difficult to conceive of a factual situation in which mere aiding and abetting would not constitute acting in concert. As was noted, such an instruction was given in *Calimee*. However, because of the possibility that some peculiar factual situation may arise in the future, we decline to make any blanket ruling that all aiding and abet-

ting necessarily constitutes acting in concert. Such blanket pronouncements have an uncomfortable faculty of coming back and haunting the author of the opinion. We simply address ourselves to the facts in this case and hold specifically that there is no requirement that the defendant either participate in or be personally present during the act for the purposes of acting in concert.

Here, the defendant obviously acted in concert. He was the one with the gun. He was the one who moved Mr. H. so that his companion would have a more convenient place for the rape of Mrs. H.

The defendant's real complaint seems to be that no case to date has permitted the imposition of the additional penalty without active participation or the defendant having been present during the sexual attack.

There is now.

## CALJIC No. 3.01

██ Defendant contends that under the recent case of *People* v. *Grant*█ (Cal.App.), the instruction given on aiding and abetting (CALJIC No. 3.01) was erroneous.

*Grant*, of course, adds nothing new to the law. It is merely the current offering in a long line of cases which have debated the problem of whether aiding and abetting with knowledge is sufficient or whether there must be a shared intent to facilitate the commission of the offense. Here, the court gave the current version of CALJIC No. 3.01 which omits the intent aspect.[1] A series of opinions have held that this instruction is proper. Another series have held that it is not. *Grant* summarizes the conflicts and deems that the instruction is faulty by reason of the omission of the intent factor. We feel that there is nothing to be gained by adding one more discussion to this increasingly lengthy line of divergent opinions. We merely hold that in this case, assuming error

---

[1]Older versions of CALJIC included the intent factor. To avoid this continuing judicial squabble, the editors of CALJIC might well consider returning to the older form. It can't hurt anything, although it is doubtful that many jurors will or have spent many hours in deep meditation over the difference between knowledge and intent.

in the giving of CALJIC No. 3.01, there is no reversible error.[2] Here, the conclusion is inescapable that the defendant's actions were with the intent to facilitate the commission of the rape.

## THE GAME

Defendant next contends there is *Faretta* error.

Any dispassionate reading of this record reflects that this defendant was playing games with the court on this issue. He knew he had no possible defense to the charges so he hoped to get error in the record.

Prior to trial, the defendant had had a *Marsden* (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) hearing in which he tried to change lawyers. The court heard him out. His complaint was without substance. His attorney, the public defender, was as prepared as she could be considering the fact that she had an uncooperative client. She had made the section 995 motion but she had not made other motions she considered lacking in merit. She detailed the work she had done. She had discussed the case with the defendant many times and had an investigator working on the case although the defendant's lack of cooperation hampered any investigation. The court found that the defendant's request for substitute counsel was without substance and found that the public defender had adequately prepared the case.

Then the defendant tried another gambit. He said if the court would not grant his request for another attorney, he would represent himself. This, of course, was a polite form of blackmail. Nothing came of this.

Then after trial started, he did request to represent himself. Again, this was based on the court's refusal to appoint another attorney. However, he said he would need three weeks to prepare for trial.

As of this time, the trial having commenced, the granting of an in pro. per. motion was addressed to the sound discretion of the trial court. (*People* v. *Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187].) The trial court denied the motion and we find no abuse of discretion because granting defendant's request would have disrupted the trial in view of the fact that he wanted three weeks to prepare himself. His request was at best equivocal and hardly an unqualified waiver

---

[2]This was the conclusion in *Grant* also.

since he only wanted to represent himself if the court would not give him another attorney. As we indicated, it is pretty obvious that this defendant was simply playing games with the court. We find no abuse of discretion in the court's denial of his motion to represent himself.

Judgment affirmed.

Kaufman, J., and McDaniel, J., concurred.

**GARDNER, P. J.,** Concurring.—For sometime I have been concerned with the increasing rate of robberies being committed in the privacy of the home and the lack of an adequate sanction for this particularly outrageous crime.

The courts have been zealous in protecting the sanctity of the home from governmental intrusion and some of our finest judicial prose is to be found in our pursuit of that commendable ambition. ("An intrusion by the state into the privacy of the home for any purpose is one of the most awesome incursions of police into the life of the individual." (*People* v. *Ramey* (1976) 16 Cal.3d 263, 275 [127 Cal.Rptr. 629, 545 P.2d 1333].) "The courts have implicitly recognized that man requires some sanctuary [the home] in which his freedom to escape the intrusions of society is all but absolute." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 882 [109 Cal.Rptr. 304, 512 P.2d 1208].)) It appears to me that society should exert no less effort in protecting the sanctity of the home from armed robbers.

There is nothing very funny about robbery in any setting, but it is particularly disturbing to find these predators plying their trade in residential areas.[1] Footpads have always lurked on our streets and highways and among our first recognized robbers were highwaymen. Also, in this imperfect society, businesses handling cash must also face the reality of robbery. Thus, when I leave my home, I face the possibility of a robbery. But when a robber invades the sanctity of my home, the outrage is all but absolute. When the robbers enter the home, as they did in this case, severe penalties must be imposed.

---

[1] By the traditional residential areas, I do not mean to restrict my remarks to single family residences on an elm shaded street. I mean a home—a place of residence—a house, an apartment, a hotel room, a motor home—be it ever so humble. I mean the place where, when I close the door I shut out the rest of the world and wallow in privacy.

When robbers enter the home, the scene is all too often set for other and more dreadful crimes such as that committed on Mrs. H. in this case. In the home, the victims are particularly weak and vulnerable and the robber is correspondingly secure. The result is all too often the infliction of other crimes on the helpless victim. Rapes consummated during the robbery of a bank or supermarket appear to be a rarity, but rapes in the course of a residential robbery occur with depressing frequency.

Therefore, I suggest to the Attorney General, as the chief law enforcement officer of this state, that he make as part of his current legislative program severe and heavy penalties for residential robbers.

It is true that a residential robber usually commits two felonies—burglary and robbery. However, under Penal Code section 654, he usually cannot be punished for both.[2] I suggest the Legislature enact a provision such as Penal Code section 211a which assesses a special enhancement punishment to robbers of taxi or bus drivers. I suggest a section 211b which would provide severe penalties for those who commit residential robberies. The Legislature has, in section 462, provided for modest increases in the sanctions for residential burglary. It appears to me that the residential robber deserves no less. Perhaps the knowledge that long-prison terms loom for the residential robber may deter such practices and render the home a little less vulnerable to this type of outrage than it is at present.

Kaufman, J., and McDaniel, J., concurred.

A petition for a rehearing was denied April 6, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1981.

---

[2] Under the Indeterminate Sentence Law, this was somewhat academic with the sentence for robbery being five years to life.