Filed 7/23/15  P. v. Harmon CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCUS DESHAWN HARMON,<br><br>    Defendant and Appellant. | A141483<br><br>(Alameda County<br>Super. Ct. No. 172503) |

**I.**

**INTRODUCTION**

Approximately one month prior to the scheduled date for his burglary trial, defendant Marcus Deshawn Harmon (appellant) asked to represent himself at trial pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).  During the hearing on his request, appellant acknowledged his request arose because he wanted additional time for his family to raise the money to retain private counsel to represent him instead of proceeding to trial with his court-appointed attorney.  The trial court concluded appellant's self-representation request was equivocal and denied appellant's *Faretta* motion on that basis.  We affirm.

**II.**

**FACTUAL BACKGROUND**

Appellant was charged with one count of first degree burglary (Pen. Code, § 459) with the enhancement of a person being in the residence (Pen. Code, § 667.5,

subd. (c)(21)).[1]  It was also alleged that appellant had suffered two prior felonies (Pen. Code, § 667.5, subd. (c)), one prior strike felony (Pen. Code, §§ 1170.12, subd. (a), 667, subd. (c)), and seven prison priors (Pen. Code, § 667.5, subd. (b)).

On February 5, 2014, a jury found appellant guilty as charged.  On February 10, 2014, after a court trial, all seven felony priors were found true.  On April 4, 2014, the trial court sentenced appellant to state prison for 14 years.  On April 7, 2014, appellant filed a timely notice of appeal.

## III.

## DISCUSSION

### A.  Trial Court's Denial of Appellant's *Faretta* Motion

On December 18, 2013, approximately 40 days before the scheduled trial date of January 27, 2014, appellant presented a motion seeking to represent himself at trial. Appellant did not complete the written motion because he had fractured his hand a few months prior and it was preventing him from writing.  The court read the form to appellant admonishing him of his rights and the consequences of self-representation.

The following discussion ensued:

"THE COURT: All right. First of all, do you understand that you have a right to a speedy and public trial by jury?

"[APPELLANT]: Yes.

"THE COURT: Do you understand that you have a right—and this applies whether you represent yourself or whether you are represented by an attorney—

"[APPELLANT]: Right.

"THE COURT:—to utilize the process of this Court to subpoena any witness or any records that you may need on your own behalf or in your defense?

"[APPELLANT]: The first part I understand, when you said in the event that I go pro per.  I understand that I have a right to utilize the process of this Court to subpoena

---

[1]  We have not summarized the evidence underlying appellant's conviction because it is not material to the outcome of his appeal.

2

any witness or any records that I may need in my own behalf or in my defense.  But in the event that I, you know, wanted representation from an attorney and you know, I'm not getting that proper representation, then I don't understand that right—

"THE COURT: Well—

"[APPELLANT]:—to subpoena witnesses.

"THE COURT:  In either case, if an attorney represents you, the same rights apply.  In other words, in the real world, sometimes defendants and attorneys get along; sometimes they don't get along.

"[APPELLANT]: Right."

The trial court went on to explain other matters regarding the right of self-representation.  The trial court then asked appellant if it was his " 'personal desire that you be granted permission by me to proceed in propria persona, acting as your own attorney.' "  Appellant replied, "Yes."  Further discussion ensued.

"[APPELLANT]: Yes, I do understand.  I understand the totality of the circumstances, you know, and everything as far as representing myself and going to trial on my own or whatever.  But right now at this moment, I feel like I'm kind of like being forced into going pro per right now, just, you know, until a couple of months from now, maybe my family can get together some money to hire me an attorney.  But to make a long story short, yes, I do understand the question.

"THE COURT: Well, if your family doesn't hire you an attorney, and you find yourself in the position of being in the middle of a jury trial—

"[APPELLANT]: I mean, things do happen, but I'm confident in my family getting together some money to hire me an attorney, but I need a couple of months.

"THE PROSECUTOR: . . . We have a jury trial date set for January 27th, 2014, and this was a date—the reason I'm here is because the Court in Department 11 sent the case here for the *Faretta*, and also indicated that the trial date should be maintained.  So I don't know if a few months to hire an attorney is going to help the situation, given the fact that we have a trial date that I would object to moving, and I know Judge Delucchi

also had strong feelings about maintaining. It's my understanding through the DA, who was in there, that he has feelings about maintaining that trial date.

"[APPELLANT]: And I would like to object to that, Your Honor. If possible, I could waive time; put in another waiver, and just, you know, give me a little more time to hire an attorney, if possible.

"THE COURT: Well, you understand that that's up to the judge in Department 11 as to whether he will allow the trial date to be changed, even if you do waive time.

"[DEFENSE COUNSEL]: Judge Delucchi indicated today that he's not moving that trial date.

"THE COURT: . . . Do you understand that you could substitute in an attorney even if Ms. Silvaggio is representing you? In other words, seems to me that it would be safer for you to have Ms. Silvaggio represent you, and then if your family gets an attorney for you, fine; that attorney can be substituted in. But if something goes wrong and that doesn't happen, then you at least have an attorney once you are in the trial. Do you see what I mean?

"[APPELLANT]: That makes sense. I understand.

"THE COURT: Okay, Well I'm going to find that there is not unequivocal waiver or motion to represent himself in this case, so the motion under *Faretta* is denied. The January 27th jury trial date will be maintained.

"[DEFENSE COUNSEL]: Your Honor, we would like to set an intervening D & S [*sic*] date. I'm requesting, perhaps, January the 10th. Is that okay?

"THE COURT: Okay. January 10th for D & S [*sic*] in Department 11.

"[DEFENSE COUNSEL]: Yes.

"[APPELLANT]: Can I say one more thing?

"DEFENSE COUNSEL: I'm going to advise my client not to speak.

"[APPELLANT]: It's not pertaining to my actual case. It's pertaining to this motion.

"THE COURT: Well, I've concluded the motion, so I'm not going to change my mind about that.

4

"[APPELLANT]: God bless you. You have a good day."

Appellant did not renew his request to proceed in pro. per. during the underlying proceedings, including his trial, at which he was represented by appointed counsel.

## B. Argument on Appeal

On appeal, appellant makes a single contention: "The court's denial of [his] *Faretta* motion was reversible error." In *Faretta*, the Supreme Court held, "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." (*Faretta*, *supra*, 422 U.S. at p. 817.) Accordingly, "[o]nce a defendant proffers a timely motion to represent himself, the trial court must proceed to determine whether 'he voluntarily and intelligently elects to do so . . . . If these conditions are satisfied, the trial court *must* permit an accused to represent himself without regard to the apparent lack of wisdom of such a choice and even though the accused may conduct his own defense ultimately to his own detriment.' [Citations.]" (*People v. Joseph* (1983) 34 Cal.3d 936, 943, italics added.) Given the importance of the countervailing Sixth Amendment right to an attorney, however, courts are to indulge every reasonable inference *against* a waiver of counsel's assistance. (*People v. Boyce* (2014) 59 Cal.4th 672, 703 (*Boyce*); *People v. Marshall* (1997) 15 Cal.4th 1, 20 (*Marshall*).)

On appeal of a ruling under *Faretta*, we review the entire record de novo to determine whether the invocation of the right of self-representation satisfies these requirements, even where the trial court has failed to conduct a full and complete inquiry. (*Marshall*, *supra*, 15 Cal.4th at p. 24.) If the trial court's stated reason for denying a *Faretta* motion is found to be improper, the ruling still will be upheld if the record as a whole establishes the motion could have been denied on an alternative ground. (*People v. Dent* (2003) 30 Cal.4th 213, 218 (*Dent*).) If erroneous, however, the denial of a proper *Faretta* request is reversible per se. (*Boyce*, *supra*, 59 Cal.4th at p. 702.)

In this case, the trial court denied appellant's *Faretta* motion, finding it was equivocal. Appellant claims this was erroneous, arguing the "key moment" in his *Faretta* request was at the very beginning, when the trial court asked him if he wished to

5

represent himself, and he "unequivocally and unambiguously stated" that he did. We disagree.

Our Supreme Court's most thorough exploration of the meaning of equivocation in this context occurred in *Marshall*. As the court initially observed, "the high court's emphasis in [*Faretta*] on the defendant's knowing, voluntary, unequivocal, and competent invocation of the right suggests that an insincere request or one made under the cloud of emotion may be denied." (*Marshall*, *supra*, 15 Cal.4th at p. 21.) With apparent approval, the court noted other courts had "declared that a motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal" and held "a court 'properly may deny a request for self-representation that is a "momentary caprice or the result of thinking out loud." ' [Citation.]" (*Ibid.*) In summation, the court concluded, "in order to protect the fundamental constitutional right to counsel, one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant *truly desires* to represent himself or herself. [Citations.] . . . [T]he defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*Id.* at p. 23, italics added.)

Cases in which a defendant was found to have made an equivocal motion for self-representation generally involve a defendant whose request is conditional (e.g., *People v. Valdez* (2004) 32 Cal.4th 73, 98–99) or not clearly and affirmatively stated. (See, e.g., *People v. Marlow* (2004) 34 Cal.4th 131, 147 [defendant's question, " 'Is it possible' " for him to represent himself, construed as a request for information]; *People v. Danks* (2004) 32 Cal.4th 269, 295–297 [defendant made "fleeting statements" about representing himself in the midst of "diatribes" about his treatment].) Often such requests arise in the context of motions for substitution of appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), when defendants frustrated by their relations with their attorneys express the generalized sentiment that even self-

6

representation would be preferable to continuing with current counsel. (E.g., *People v. Stanley* (2006) 39 Cal.4th 913, 932–933; *People v. Roldan* (2005) 35 Cal.4th 646, 678, 683–684, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22 [during hearing on *Marsden* motion, defendant said, " 'I'll be my own lawyer if he is going to be like that.' [(Italics omitted.)]"].)

After making a de novo review of the record, we agree with the trial court that appellant's statements did not represent an unequivocal and sincere invocation of the right of self-representation. Although appellant initially stated he wanted to represent himself, the trial court's careful questioning made it clear that what appellant actually sought was additional time for his family to raise the necessary funds to hire private counsel to represent him in his upcoming trial. In short, the record shows appellant's true desire was different representation and not self-representation.

We have cited numerous cases standing for the proposition that a defendant's invocation of the right of self-representation is not considered unequivocal when motivated simply by dissatisfaction with the defendant's current attorney. (See *People v. Lopez* (1981) 116 Cal.App.3d 882, 889–890 [*Faretta* request "was at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney"].)

Appellant also complains the trial court precluded him from making his *Faretta* request more unequivocal and foreclosed any realistic possibility that his request for self-representation would be considered in the future. When appellant wanted to "say one more thing" at the end of the hearing, the court indicated it did not wish to hear anything further from appellant stating, "[w]ell, I've concluded the motion, so I'm not going to change my mind about that."

Appellant's assignment of error takes the trial court's comment out of context and ignores the entirety of the trial court's previous discussion of appellant's *Faretta* motion, which we have set out at length in this opinion. Before the challenged comment, the trial court engaged appellant in a lengthy dialogue to make certain he understood what a *Faretta* request entailed. Reasonably deducing appellant was actually dissatisfied with

7

his current representation, the trial court's questioning revealed that appellant actually felt that he was being "forced" into self-representation as the only means of delaying the trial for a few months in order to allow his family to obtain sufficient funds to hire private counsel. We find the trial court's management of defendant's *Faretta* motion provided abundant opportunity for defendant to unequivocally state his request for self-representation. Once the trial court denied appellant's *Faretta* request as being equivocal, its refusal to entertain further argument on the matter fell within the bounds of the court's inherent powers to control the proceedings.[2] We find no *Faretta* error.

## IV.

## DISPOSITION

The judgment is affirmed.

---

[2] Consequently, *Dent*, *supra*, 30 Cal.4th 213, to which appellant compares this case, is readily distinguishable. In *Dent*, the court unequivocally denied the defendant's *Faretta* motion by stating, "I am not going to let him proceed in pro. per. . . . . Not in a death penalty murder trial." (*Id.* at p. 217.) Thus, there was no point in renewing the motion because making the request again would be futile. (*Id.* at p. 219.) Here, there was nothing in the court's remarks indicating submitting a new request for self-representation at some other point in time would have been futile.

_____
RUVOLO, P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.

9

A141483, *People v. Harmon*