Filed 9/13/16  P. v. Lewis CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PHILANDER LEWIS,<br><br>    Defendant and Appellant. | F070565<br><br>(Super. Ct. No. 1434688)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs, Judge.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

After a 2014 trial, a jury convicted Philander Lewis of two counts of home invasion robbery in concert, one count of burglary, and two counts of assault, along with accompanying sentencing enhancements.  The jury acquitted him of one count of

attempted murder. Lewis also admitted seven prior prison terms. He was sentenced to 20 years in prison.

On appeal, Lewis argues that his sentence should be reduced from 20 years to 16 years, four months because (1) there was insufficient evidence to convict him of first degree robbery of an inhabited dwelling in concert with two or more persons, and (2) the trial court imposed an unauthorized sentence in its imposition of an arming enhancement. We find only his second contention meritorious and in turn hold that he is entitled to have his sentence reduced to 19 years, four months.

## STATEMENT OF THE CASE

On April 20, 2012, an information filed in Stanislaus County charged Lewis and codefendant Robert Belfield with: count I - the attempted murder of Douglas Oliver (Pen. Code,[1] §§ 664, 187, subd. (a)); counts II and III – first degree robbery of an inhabited dwelling in concert with two or more persons (of Oliver and Carmela Grays) (§§ 212.5, subd. (a), 213, subd. (a)(1)(A)); count IV - residential burglary (§ 459); and counts V and VI - assault with a firearm upon Oliver and Grays (§ 245, subd. (a)(2)). The information further alleged that Lewis was armed with a firearm in counts I through VI (§ 12022, subd. (a)(1)) and had served seven prior prison terms (§ 667.5, subd. (b)).

A jury trial began on March 25, 2014. On April 23, 2014, the jury returned verdicts acquitting Lewis of count I, but convicting him on all remaining counts, and finding the firearm enhancement true. Lewis admitted the prior prison term enhancements.

On November 18, 2014, Lewis was sentenced to a total term of 20 years in prison as follows: the aggravated term of nine years on count II (§§ 212.5, subd. (a), 213, subd. (a)(1)(A)), plus one year for the arming enhancement (§ 12022, subd. (a)(1)); two years (one-third of the middle term) on count III (§§ 212.5, subd. (a), 213, subd. (a)(1)(A)),

---

[1]    All further statutory references are to the Penal Code unless stated otherwise.

2.

plus one year for the arming enhancement (§ 12022, subd. (a)(1)); seven years for the seven prior prison term enhancements (§ 667.5, subd. (b)). Counts IV, V, and VI were stayed pursuant to section 654.

Appellant filed a timely notice of appeal on December 2, 2014.

## STATEMENT OF FACTS

Lewis and the victim Oliver were acquaintances. Lewis visited Oliver's house about a month before the charged crimes and saw Oliver's medical marijuana growing operation. On July 20, 2011, at about 12:45 a.m., Oliver and Grays, who was eight and a half months pregnant, were in their living room. Oliver was asleep on the couch and Grays was using a laptop computer when Oliver was awakened by a loud knocking on the front door. Oliver went to the door, looked through the peephole, and saw a woman standing outside. He opened the door and two men wearing ski masks forced their way inside. One of the men was holding a handgun.

The man with the gun entered the house and pointed the gun at Oliver's face. The gunman then walked toward Grays and pointed the gun at her and ordered her to turn around and get on the ground. The other man tried to close the front door, but Oliver put his hands in the doorway and fought to keep the door open. Oliver and this man began scuffling. Oliver testified he began yelling to his neighbors for help.

The man with the gun struck Oliver from behind in the back of the head multiple times during the scuffle, causing injuries that would later require Oliver to receive about 28 staples in his head at the hospital. The man he was scuffling with then said, "Shoot him." Oliver was then shot in the back by the man with the gun. Grays called 911 and later discovered that her laptop computer was missing.

A California Highway Patrol officer in the area received a radio broadcast of the shooting. He then observed a white Ford Taurus stopped at a red light, coming from the direction where the shooting had occurred. The officer testified that the Ford was the only car on the road at the time. The car accelerated rapidly once the light turned green

and the officer then began to follow it until it made an abrupt stop, at which point the officer activated his emergency lights. All three occupants of the Ford, later identified as Lewis, Belfield, and Jasmine Hampton, then exited the Ford and fled on foot. Belfield was chased by officers and arrested, and a handgun was recovered nearby. Police searched the Ford and found Grays's laptop and a ski mask, and a second ski mask was found outside the car. Following an investigation, officers found and arrested Lewis and Hampton.

Lewis did not testify at trial, but Belfield did. In the course of his testimony, Belfield admitted he and Lewis planned to steal marijuana from Oliver's house and that they knew that Oliver would be home. Belfield also admitted he and Lewis procured ski masks and zip ties for purposes of the robbery and that Belfield was armed with a loaded gun. After parking the car in an alley, Hampton was instructed by Lewis and Belfield to knock on Oliver's door. Belfield testified that after Hampton knocked on the door and the porch light came on, Hampton looked at Belfield and nodded her head and then she turned around and walked away. Belfield further testified he and Lewis went into the house when the door opened and that Belfield was the gunman. Belfield said he did not go into detail about the robbery plan with Hampton, and he adopted the prosecutor's suggestion that Hampton did not really know what was going on because the robbery plan was figured out before Hampton was picked up by Lewis and Belfield.

Pursuant to a plea agreement, Hampton testified for the prosecution. She testified that she did not find it unusual that she was asked to go knock on the door since there had been previous times where someone in the car will get out and to go knock on the door of a person who they were picking up for a ride. She further testified Lewis and Belfield both got out of the car with her after they parked the car in the alley. However, she did not see Lewis or Belfield follow her to the door, and it was not until after she knocked on the door and Oliver turned the porch light on that she finally saw Lewis and Belfield come up behind her with ski masks on. She further testified she was surprised upon

4.

seeing Lewis and Belfield come up behind her with ski masks on and that she thought to herself, "What's going on?" She said she left the front door and went back to the car because that is what she was instructed to do.

## DISCUSSION

I. THERE WAS SUFFICIENT EVIDENCE THAT APPELLANT COMMITTED THE ROBBERY OF AN INHABITED DWELLING HOUSE IN CONCERT WITH TWO OR MORE OTHER PERSONS

Lewis does not contest that he is guilty of first degree robbery. However, he argues that he is not guilty of acting in concert with two or more persons to commit first degree robbery of an inhabited dwelling within meaning of section 213, subdivision (a)(1)(A). A conviction under section 213, subdivision (a)(1)(A), triggers an aggravated sentence. Lewis contends there is insufficient evidence to prove that he acted in concert with two or more people during the home invasion robbery because he acted in concert only with Belfield and not with Hampton. The necessary premise of his contention is that although Hampton was an aider and abettor, Hampton's conduct as an aider and abettor is insufficient to support a finding that she acted in concert with Lewis and Belfield. While Lewis is correct that aiding and abetting does not necessarily constitute acting in concert in every case, we hold that there was sufficient substantial evidence that Hampton's conduct as an aider and abettor rose to the level of acting in concert. We therefore reject Lewis's contention on this issue and hold that the three of them – Lewis, Belfield, and Hampton – all acted in concert during the home invasion robbery.

*A. Standard of Review*

On appeal, when assessing the sufficiency of the evidence, we "review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) It is not necessary for us to be convinced beyond a reasonable doubt

5.

of the defendant's guilt; rather, we simply must be satisfied that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) "We may not reverse a conviction for insufficiency of the evidence unless it appears that upon no hypothesis [whatsoever] is there sufficient substantial evidence to support the conviction." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)

>    *B. Applicable law and analysis*

Section 213, subdivision (a)(1)(A) reads: "If the defendant, voluntarily acting in concert with two or more other persons, commits [a] robbery within an inhabited dwelling house, … [he or she shall be punished] by imprisonment in the state prison for three, six, or nine years." An important question is whether or not aiding and abetting always constitutes acting in concert for purposes of this statute. Section 213 does not provide any further clarification or definition of the term "acting in concert," nor do we find any such further direction in the legislative history of the statute.

At Lewis's trial, the trial court charged the jury with CALCRIM No. 1601, which is the recommended juror instruction for an alleged violation of section 213. CALCRIM No. 1601 instructs that to convict under section 213, subdivision (a)(1)(A) the prosecution must prove that: "1. The defendant personally committed or aided and abetted a robbery; [¶] 2. When he did so, the defendant voluntarily acted with two or more other people who also committed *or aided and abetted* the commission of the robbery; [¶] AND [¶] 3. The robbery was committed in an inhabited dwelling." (Italics added.) It appears from the wording of CALCRIM No. 1601 that aiding and abetting always constitutes acting in concert. But of course, CALCRIM instructions are not binding authority. Moreover, the sexual assault cases *People v. Wheeler* (1977) 71 Cal.App.3d 902 (*Wheeler*) and *People v. Lopez* (1981) 116 Cal.App.3d 882 (*Lopez*) clearly explain the precedent that aiding and abetting does not necessarily constitute

acting in concert in every case. Because these cases are binding authority and CALCRIM instructions are not, their holdings must be applied.

In *Wheeler*, the court held that "[a]iding and abetting need not in every case be synonymous with 'acting in concert.'" (*Wheeler*, *supra*, 71 Cal.App.3d at p. 906.) Additionally, the *Lopez* court held that:

> "[I]t is difficult to conceive of a factual situation in which mere aiding and abetting would not constitute acting in concert.... However, because of the possibility that some *particular* factual situation may arise in the future, we decline to make any blanket ruling that all aiding and abetting necessarily constitutes acting in concert. Such blanket pronouncements have an uncomfortable faculty of coming back and haunting the author of the opinion. We simply address ourselves to the facts in this case and hold specifically that there is no requirement that the defendant either participate in or be personally present during the act for the purposes of acting in concert." (*Lopez*, *supra*, 116 Cal.App.3d at pp. 887-888, italics added.)

By choosing to use the word "particular," we take it that the *Lopez* court was saying that there may be only a small number of distinct and discrete factual scenarios in which we should decline to hold that an aider and abettor did not act in concert. For the factual reasons discussed below, we hold that Lewis's case is not one of those "particular" factual scenarios the learned justices in *Lopez* had in mind.

Merriam Webster simply defines "in concert" as "together." (Merriam-Webster Online Dict. http://www.merriam-webster.com/dictionary/in%20concert [as of Sept. 1, 2016].) By Lewis claiming that Hampton did not act in concert with Lewis and Belfield in the home invasion robbery, he effectively is claiming that Hampton did not act together with Belfield and Lewis. Specifically, Lewis contends that Hampton's knocking on the door and subsequent withdrawal is insufficient evidence to hold that she acted together with Lewis and Belfield in committing the home invasion. We disagree. Hampton's act of knocking on the door is what set this whole ordeal into motion. It was 12:45 a.m., and therefore very unlikely that Oliver would have opened the door for a man at that hour. We are satisfied that a rational trier of fact could find that the home invasion

7.

would not have happened without Oliver opening the door, and that Lewis, Belfield, and Hampton all knew that their chances of getting Oliver to open the door would be significantly increased if Hampton went by herself to the door and knocked.  In short, Hampton's act of knocking on the door was such an integral part of the robbery scheme that it would be irrational to hold that Hampton was an aider and abettor who did not act together with Lewis and Belfield.  Although we are unable to give an example of how a person can be an aider and abettor without acting in concert, we are certain that this case is no such example.

II.  THE TRIAL COURT ERRED BY IMPOSING A ONE-YEAR TERM FOR THE ARMING ENHANCEMENT IN COUNT THREE INSTEAD OF ONE-THIRD OF THE TERM FOR THE ENHANCEMENT AS PART OF THE SUBORDINATE, CONSECUTIVE TERM FOR ROBBERY

Lewis argues that the trial court imposed an unauthorized sentence by its imposition of a one-year arming enhancement in count III pursuant to section 12022, subdivision (a)(1) and that the correct sentence for that particular enhancement should have been four months. Respondent agrees as do we.

Lewis's trial counsel's failure to object does not operate as a waiver of this issue on appeal, since unauthorized sentences are reviewable, "regardless of whether an objection or argument was raised in the trial and/or reviewing court."  (*People v. Welch* (1993) 5 Cal.4th 228, 235.)  Lewis also cites the ruling in *People v. Smith* (2001) 24 Cal.4th 849, 852 that an unauthorized sentence involving pure questions of law is reviewable at any time.

Section 1170.1, subdivision (a), provides in relevant part:

"[W]hen any person is convicted of two or more felonies, … the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1.  The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements.  The subordinate term

8.

for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, *and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses….*" (Italics added.)

Count III is a subordinate offense. Therefore, the term imposed for any specific enhancement to count III should be one-third of what the term would ordinarily be. Specifically, section 12022, subdivision (a)(1) is the applicable enhancement to count III, which carries an enhancement of one year. Therefore, the term imposed for the arming enhancement in count III should have been four months, not one year.

## DISPOSITION

The judgment of conviction under Penal Code section 213, subdivision (a)(1)(A), is affirmed, but the Penal Code section 12022, subdivision (a)(1), sentencing enhancement under count III is reduced from one year to four months. Therefore, Lewis's imposed term of imprisonment should be reduced from 20 years to 19 years, four months. The trial court is ordered to prepare an amended abstract of judgment reflecting this modification and send a certified copy to the California Department of Corrections and Rehabilitation.

_____
FRANSON, J.

WE CONCUR:


_____
HILL, P.J.


_____
SMITH, J.

9.